Stephen Goodwin LOY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–97–01062–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 3, 1998.

Jack B. Zimmermann, Houston, for appellant.

John B. Holmes, Alan Curry, Houston, for Appellee.

Before COHEN, HEDGES and TAFT, JJ.

## OPINION

MURRY B. COHEN, Justice.

A jury convicted appellant of driving while intoxicated (DWI). The trial judge assessed punishment at 3 years in prison and a $500 fine. We reverse and remand.

### Background

While investigating an unrelated offense, Officer Slinkard saw appellant's car speeding and shined his flashlight at it. Appellant screeched to a halt. Officers Slinkard and Pearce determined appellant was intoxicated. Officer Jamie drove appellant to jail.

At the station, a fourth officer, Officer Lambright, warned appellant according to TEX. TRANSP.CODE ANN. § 724.015 (Vernon Pamph.1998). As the videotaping began, the following discussion immediately ensued:

Appellant: One question. Can I talk to my attorney first?

Officer: You don't want to do any of these?

Appellant: Not until I talk to my attorney.

Officer: Alright, sir. I'm going to advise you of your legal rights at this time.

Appellant: Certainly.

Officer: You have the right to remain silent and not make any statement at all. Any statement that you make may be used against you at your trial. Do you understand?

Appellant: Can I have a phone call first?

Officer: Well, I'm reading you your rights now.

Appellant: Sure.

Officer: Okay. Did you understand what I just read to you?

Appellant: Yes. Can I have a phone call first?

Officer: Well, that's ... not right now.

Appellant: Oh.

Officer Lambright asked appellant whether he agreed to give up his rights and answer questions. Appellant responded, "I'll leave them as they are, as they are." Appellant asked whether he could take a balancing test, but the officer replied, "Well, that's what I was attempting to show you a moment ago, but you said that you wanted to contact your lawyer." The officer repeated similar statements twice, and appellant confirmed that he wanted to consult his lawyer before taking any tests.

Appellant moved to suppress the audio portion of this videotape, because he had invoked his right to counsel and his right to terminate the interview. The trial judge denied the motion, and the jury viewed the videotape with sound.

### Invocation of Constitutional Rights

**1. Error**

In his first issue, appellant argues the trial judge should have suppressed the audio portion of the videotape because it shows him requesting his attorney.

■ Appellant clearly invoked his right to counsel. Evidence showing that was inadmissible. *Hardie v. State,* 807 S.W.2d 319, 322 (Tex.Crim.App.1991).

## 2. Harm

We apply the harm standard set out in Tex.R.App. P. 44.2(a) and approved in *Hardie*, 807 S.W.2d at 322.

■ The State first argues any error in allowing the jury to hear appellant's invocation of his right to counsel was harmless because Officer Lambright testified once to this fact.[1] We disagree. Officer Lambright testified once, briefly, that appellant asked for his attorney. The videotape, in contrast, showed appellant repeatedly asking for counsel and the officer repeatedly discussing this request. We hold that Officer Lambright's unresponsive answer to one question did not render harmless the inadmissible evidence of repeated requests for counsel from appellant's own mouth.

The nature of the error is that the videotape showed appellant asking for counsel three times and the officer repeating this request three times. The error's source was the State. The probable collateral implication was that appellant was guilty because he repeatedly requested his attorney. *See Cooper v. State,* 961 S.W.2d 222, 227 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). The State emphasized the error. In closing argument, the prosecutor told the jury to "watch the video again, *listen to this man.*" During the guilt/innocence stage of trial, the jury heard on the videotape (1) appellant invoke his right to counsel three times and (2) Officer Lambright repeat appellant's request three times. *See Rezac v. State,* 722 S.W.2d 32, 33 (Tex.App.—Dallas 1986), *rev'd on other grounds,* 782 S.W.2d 869 (Tex.Crim.App. 1990) ("The evidence showing Rezac repeatedly demanding an attorney is especially harmful because it is quite possible that the jury believed that Rezac's insistence on an attorney indicated his guilt."). The jury also heard the State ask a defense witness if appellant usually forgot things "[l]ike asking for an attorney, then forgetting, saying, 'oh, yeah, I want an attorney.'"

■ The State argues that overwhelming evidence dissipates the error's effect. We review all the evidence to determine the weight the jury would probably place on the audiotape. *Cooper,* 961 S.W.2d at 227. Officer Slinkard said appellant was speeding, swerved, and screeched to a halt. Appellant got out of his car only after repeated orders to do so. Officers Slinkard, Pearce, and Lambright said appellant smelled strongly of alcohol and had glazed or bloodshot eyes and slurred or "thick-tongued" speech. Officers Slinkard and Pearce said appellant walked unsteadily, had trouble just standing, and acted belligerently, and Officer Jamie had to assist appellant to the patrol car to prevent his falling. Officer Jamie also said appellant admitted drinking three beers seven hours before. Finally, Officer Jamie claimed appellant could not complete more than one field sobriety test, because he could not stand well, and performed poorly on the one sobriety test given (the HGN). Appellant refused a breath test. Appellant gave Officer Lambright a cupful of toilet water instead of a urine sample. All the officers testified appellant was intoxicated. In the audio portion of the videotape, appellant's speech sounds somewhat slurred.

In contrast, appellant did not look intoxicated on the videotape. He communicated intelligently and appropriately with the officer. Appellant's witness said he had not seen appellant drink in two years and that appellant did not appear intoxicated on the videotape. There were no blood, breath, or urine test results admitted. Given appellant's appearance on the videotape, a rational juror could have doubted appellant was intoxicated then or that, only a short time before, appellant had appeared as the officers had stated.

The record shows the jury considered the videotape to be important. The jury sent a note asking to "view all of the evidence." The only significant physical evidence was the videotape. The note indicates that the jury reviewed and relied on the videotape. *See Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet. ref'd) (finding harmful error when jury asked to see the videotape again during deliberations). Moreover, the jury deliberated on guilt for nearly two hours, possibly indicating it thought the

---

1. The State conceded at oral argument that appellant preserved this complaint for review.

evidence was close. Knowing this, and that the jury asked for the videotape, we cannot conclude with confidence beyond a reasonable doubt that this error was harmless. Finally, we cannot say that, if we were to declare this error harmless, the State would not be encouraged to offer this sort of impermissible evidence in the future. *See Cooper,* 961 S.W.2d at 228. Even declaring the error harmful and reversing for it, as we did in *Cooper,* has not prevented its recurrence.

Accordingly, we sustain appellant's first issue.

We need not reach appellant's second issue (alleged invocation of right to terminate questioning).

### Conclusion

We reverse the judgment and remand the cause.

TAFT, J., dissenting.

TAFT, Justice, dissenting.

I agree with the majority opinion's conclusion that evidence showing appellant's invocation of the right to counsel was inadmissible. The audiotape in the present case contained, however, a small portion during which appellant invoked his right to counsel, or the officer commented upon that invocation, and a much larger portion during which appellant was either being processed routinely as a driving while intoxicated (DWI) suspect or was being given his rights.[1] Because the larger portion not relating to invocations of appellant's rights was admissible, the trial court did not err in overruling appellant's general objection to the entire audiotape. *See Brown v. State,* 692 S.W.2d 497, 501 (Tex.Crim.App.1985); *Pinkney v. State,* 848 S.W.2d 363, 367 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (both standing for the proposition that a general objection to evidence that is only partially inadmissible does not preserve an objection to the inadmissible part). There-

fore, I respectfully submit that appellant did not preserve error.

In all fairness to appellant, he was relying on our decision in *Cooper v. State,* 961 S.W.2d 222 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). In *Cooper,* this same panel addressed a contention very similar to appellant's; the only difference is that the right invoked was the right to terminate rather than the right to counsel. We held that, once a videotaped DWI arrestee invokes his right to counsel, the entire audiotape thereafter is inadmissible. *Id.* at 226–27. I believe our holding in *Cooper* was overbroad. We ought to take this opportunity to clarify the confusing law applicable to the invocation of rights in videotaped interviews of persons arrested for DWI.

### A. No rights to Counsel or to Terminate the Interview

As pointed out in *McCambridge v. State,* police officers create confusion by giving article 38.22 rights without informing a defendant that those warnings do not apply to his decision to provide a breath sample. 712 S.W.2d 499, 506 (Tex.Crim.App.1986). A defendant's warnings are required before custodial interrogation, but questions normally accompanying the processing of a DWI arrestee do not constitute custodial interrogation. *Id.* at 504.

### B. Invocations of Non–Existent Rights Inadmissible

Nevertheless, if a defendant invokes rights to counsel or to terminate the interview, although he does not have these rights, such invocations are inadmissible. *See Hardie v. State,* 807 S.W.2d 319, 322 (Tex.Crim.App. 1991); *Cooper,* 961 S.W.2d at 226.

### C. Correct Remedy

There is no disputing that the correct remedy in the context of custodial interrogation, when rights are invoked but questioning continues, is to eliminate from admissibility all

---

1. While the "rights" of an accused are often described as *Miranda* rights, officers in Texas give suspects their rights according to article 38.22 of the Code of Criminal Procedure. The respective rights are slightly different; article

38.22 includes an additional right to terminate the interview at any time. *Compare Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) *with* Tex.Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979).

matters from the invocation of rights onward. I suggest that the remedy in the context of routine processing of a DWI arrestee is different. The only inadmissible portions of a videotape, for example, containing invocations of rights are the invocations of those rights. They must be deleted. This may involve redacting both the question asking if the defendant wants to invoke the right and the invocation itself. The remainder of the videotape portraying the sights and sounds of normal processing of a DWI arrestee is admissible.

### Conclusion

It is important in addressing the error raised in this case that distinctions be made between the baby (here, the larger portion without invocations of rights) and the bathwater (here, the smaller portion containing invocations). Because appellant's objection was to the entire contents of the bath, without specifying his objection to only the bathwater, the trial court did not err in overruling the objection and not throwing out the baby with the bathwater.