In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00218-CR


______________________________




JOHNNIE MAE BARKIN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33,979-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Johnnie Mae Barkin, appellant, has filed with this Court a motion to dismiss her appeal. The


motion is signed by Barkin and by her counsel in compliance with Tex. R. App. P. 42.2(a). As 
 
authorized by Rule 42.2, we grant the motion. See Tex. R. App. P. 42.2.


 Accordingly, we dismiss the appeal.




 Bailey C. Moseley

 Justice


Date Submitted: November 17, 2008

Date Decided: November 18, 2008


Do Not Publish





d="false" Priority="39" Name="toc 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00185-CR

                                                ______________________________

 

 

                            ROBERT EARL DANGERFIELD,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22821

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Robert Earl Dangerfield was
convicted of DWI, third offense,[1]
and was sentenced to ten years imprisonment. 
Dangerfield appeals his conviction, claiming (1) his right to
counsel was violated; (2) he received ineffective assistance of counsel during
trial; and (3) the evidence was legally and factually insufficient to support a
conviction for DWI.  We affirm the
judgment of the trial court.

I.        FACTUAL
AND PROCEDURAL BACKGROUND

 

            Officer
Billy Pillars[2] was on patrol
duty on the evening of July 24, 2008, when he saw a puff of smoke coming from
underneath the Loop on North Main Street in Paris, Texas.  Pillars proceeded toward the Loop and found a
blue car high centered on the guardrail underneath the Loop on the east
side.  The only person in the blue car
was a black male, who identified himself as Dangerfield.  Dangerfield was sitting on the drivers side
of the car, with the engine still running. 
Both doors were jammed shut, but Dangerfield was able to kick the
passengers side door open and get out of the car.  Dangerfield told Pillars he did not know what
happened, and stated that he was not injured. 


            When
Dangerfield stepped out of the car, his balance was very unsteady, he only had
one shoe on, and he began urinating on the side of the road.  When Pillars told Dangerfield to stop,
Dangerfield zipped his pants back up, but did not stop urinating.  Dangerfields eyes were red, and his breath
carried a strong odor of alcohol.[3]  Pillars found an open can of cold Busch beer
in Dangerfields car.  When asked to
perform standard field sobriety tests, Dangerfield refused.  When Dangerfield refused to attempt to step
over the guardrail, Pillars asked him to walk around it.  At that time Pillars testified that
Daingerfield stated, Im drunk, just show me, Im drunk. Dangerfield was then
transported to the Lamar County jail, where Corporal Doug Murphy[4]
was called upon to administer an Intoxilyzer test. 

            Before
attempting to administer the test and prior to advising Dangerfield of his
statutory rights,[5] Murphy advised
Dangerfield of his Miranda[6]
rights.  Immediately, Dangerfield
requested an attorney.  Dangerfield was
then advised of his statutory rights under the Texas Transportation Code,
during which time he reiterated his request for counsel.  Murphy advised Dangerfield that he did not
have a right to counsel during the taking of a specimen.  After having been advised of his statutory
rights, Dangerfield indicated he did not wish to speak with Murphy.[7]
Dangerfield voluntarily stated, however, that he was not drunk and that he was
not high.  Murphy then asked Dangerfield
if he wanted to answer any more of my questions?  Dangerfield responded, Since its you, I
will [answer your questions].    

            Thereafter,
Dangerfield proceeded to tell Murphy that he had been drinking earlier, that
he had been drinking since one oclock, and that he had consumed Busch beer
and Canadian Hunter whiskey. 
Dangerfield, a diabetic, also told Murphy that he had not taken any
medicine for his diabetes in approximately two weeks because he had been
drinking.   Dangerfield refused to submit to an Intoxilyzer
test. 

II.        ANALYSIS

 

            A. 
Dangerfields Right to Counsel Was Not Violated.

 

            Dangerfields
claim that he was denied right to counsel under the Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution is based on the
admission of evidence at trial allegedly obtained in violation of his Miranda rights,[8]
and even though his trial counsel did not object to the admission of evidence
obtained after he invoked his right to counsel, the admission of such evidence
is fundamental error.  We disagree.

            1. 
Sixth Amendment Right to Counsel

 

            The right to
counsel under the Sixth Amendment to the United States Constitution protects an
accuseds right to counsel only at or after the time that adversary judicial
proceedings have been initiated, whether by way of a formal charge, preliminary
hearing, indictment, information or arraignment.  Griffith
v. State, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001).  A person has not become an accused within
the meaning of the Sixth Amendment merely because he or she has been detained
by the government with the intention of filing charges against them.  Id.;
United States v. Gouveia, 467 U.S.
180, 18790 (1984).  In the present case,
adversary judicial proceedings had yet to commence because the State did not
file charges against Dangerfield until sometime after questioning by
Murphy.  Therefore, Dangerfields Sixth
Amendment right to counsel had not yet attached.   Accordingly, no violation of Dangerfields
Sixth Amendment right to counsel occurred. 
This point of error is overruled.

            2. 
Fifth Amendment Right to Counsel

 

            The Fifth
Amendment limitations on interrogation have been announced in court decisions
beginning with Miranda v. Arizona,
384 U.S. 436 (1966) in which the Court held, 

The
circumstances surrounding in-custody interrogation can operate very quickly to
overbear the will of one merely made aware of his privilege by his
interrogators.  Therefore, the right to
have counsel present at the interrogation is indispensable to the protection of
the Fifth Amendment privilege under the system we delineate today.

 

Id. at 469.  Mirandas
procedural safeguards were designed to operate in the context of custodial
interrogation.  Griffith, 55 S.W.3d at 603. 
Questions normally accompanying the processing of a DWI arrestee do not
constitute custodial interrogation.  Id.; McCambridge
v. State, 712 S.W.2d 499, 504 (Tex. Crim. App. 1986).  Further, a suspects decision to take or
refuse a breath test and the question prompting that decision do not constitute
custodial interrogation, nor do they involve the constitutional privilege
against self-incrimination.  Hernandez v. State, 13 S.W.3d 78, 82
(Tex. App.Texarkana 2000, no pet.).

            Dangerfield
contends, however, that because he was asked a number of pointed questions
regarding the facts of the amount of alcohol he drank, when he quit drinking,
when he last ate, as well as information about medications he was taking, all
of which took place after he invoked his right to counsel, nothing he said
thereafter could be introduced as evidence at trial.   Assuming the State elicited such information
in derogation of Dangerfields Miranda
rights, we will address Dangerfields contention that the introduction of such
evidence amounts to fundamental error.

            Dangerfield
acknowledges his failure to object to alleged inadmissible evidence, but claims
that the admission of the disputed evidence constitutes fundamental error and
is therefore reviewable.  To preserve
error concerning the erroneous admission of evidence, a defendant must timely
lodge a specific objection.  Tex. R. Evid. 103(a)(1); Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990); Cacy v. State,
901 S.W.2d 691, 699 (Tex. App.El Paso 1995, pet. refd).  However, an exception to general waiver
principles exists for fundamental error.  See Tex. R. Evid. 103(a)(1).  Fundamental errors are violations of rights
which must be affirmatively waived, or denials of absolute systemic
requirements.  Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).[9]

            Numerous
constitutional rights, including those that implicate a defendants due process
rights, may be forfeited for purposes of appellate review unless properly
preserved.  Anderson v. State, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009).   A defendants right to have the State
refrain from introducing certain evidence is neither an absolute systemic
requirement, nor a right that must be affirmatively waived.  Saldano,
70 S.W.3d at 889.  In order to complain
about the admissibility of a confession, even in regard to a violation of Miranda, and other federally guaranteed
constitutional rights, there must be an objection in the trial court.  Ex
parte Bagley, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974).  The requirement of a trial court objection
applies with equal force to alleged Miranda
violations.  Allridge v. State, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988).  The defendants right to remain silent and
not have that silence used against him or her at trial is a right which may be
forfeited, and must be preserved via appropriate objection at trial.  See
Wheatfall v. State, 882 S.W.2d 829,
836 (Tex. Crim. App. 1994) (complaint concerning admission of evidence of
defendants post-arrest silence waived in absence of objection.).  Moreover, to permit a jury to hear a
defendant invoke his or her right to counsel is not fundamental error.  Reyes
v. State, 267 S.W.2d 268, 273 (Tex. App.Corpus Christi 2008, pet. denied).  

            Here, the
failure to object to the admission of the officers testimony and the recording
did not deny Dangerfield of the right to counsel, but merely forfeited his
remedy of excluding evidence obtained after he had invoked his right to counsel
during the interrogation.  We find this
complaint involves a right that was forfeitable.  Because Dangerfield did not object to the
admission of the evidence of which he now complainsMurphys testimony
regarding what is on the video recording, and the presentation to the jury of
the actual video recordingthe question he seeks to present has not been
preserved for our review.  We overrule this
point of error.

            B.  
Dangerfield Did Not Receive Ineffective Assistance of Counsel

 

            In his second point of error,
Dangerfield asserts four instances whereby he was allegedly denied effective
assistance of counsel for failing to object to the following:  (1) 
inadmissible portions of the video recording of Dangerfield, showing
incriminating responses to custodial interrogation; (2) Murphys testimony
concerning Dangerfields statements to Murphy after Dangerfield invoked his
right to counsel; (3) the audio portion of the video recording showing
Dangerfields repeated requests for counsel; and (4) Pillars testimony
regarding the cause of the accident. 

             Ineffective assistance of counsel claims are
evaluated under a two-part test formulated by the United States Supreme Court,
requiring a showing of both deficient performance and prejudice.  Strickland
v. Washington, 466 U.S. 668, 689 (1984). 
First, Dangerfield must show that his counsels representation fell
below an objective standard of reasonableness. 
Fox v. State, 175 S.W.3d 475,
485 (Tex. App.Texarkana 2005, pet. refd) (citing Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)).  There is a strong presumption that counsels
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.  Strickland,
466 U.S. at 689; Ex parte White, 160
S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong,
25 S.W.3d at 712.  Therefore, we will not
second guess the strategy of Dangerfields counsel through hindsight.  See
Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979); Hall v. State,
161 S.W.3d 142, 152 (Tex. App.Texarkana 2005, pet. refd).

            The second Strickland prong requires a showing that
the deficient performance prejudiced the defense to the degree that there is a
reasonable probability that, but for the attorneys deficiency, the result of
the trial would have been different.  Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712.  Failure to satisfy either prong of the Strickland test is fatal.  Ex
parte Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

            Allegations
of ineffectiveness must be firmly founded in the record.  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Wallace v. State, 75 S.W.3d 576, 589
(Tex. App.Texarkana 2002), affd,
106 S.W.3d 103 (Tex. Crim. App. 2003). 
Absent an opportunity for the attorney to explain the questioned
conduct, we will not find deficient performance unless the challenged conduct
was so outrageous that no competent attorney would have engaged in it.  Goodspeed,
187 S.W.3d at 392; Fox, 175 S.W.3d at
486.  For this reason, direct appeal is
usually an inadequate vehicle for raising such a claim because the record is
generally undeveloped.  Thompson, 9 S.W.3d at 81314; Fox, 175 S.W.3d at 485.  

            Dangerfields
first two complaints of ineffective assistance are related in that they
complain about the admission of allegedly objectionable evidencethe first in
the form of a video recording and the second in the form of Murphys trial
testimony.  

            The Fifth
Amendment bars police-initiated interrogation of an accused who, in the context
of custodial interrogation, has asserted his or her right to counsel during
that interrogationunless the accuseds counsel is actually present.  Hughen
v. State, 297 S.W.3d 330, 335 (Tex. Crim. App. 2009).  Dangerfield does not contend that the conduct
of field sobriety tests or questions normally attendant to record-keeping
procedures in an arrest situation are testimonial in nature; rather, he
contends that questions regarding when he had last eaten, what he had to drink,
and when he last drank went beyond the scope of that normally attending arrest
and amounted to custodial interrogation because the questions asked were likely
to elicit an incriminating response.  Jones v. State, 795 S.W.2d 171, 174
(Tex. Crim. App. 1990).  Dangerfield thus
contends that his attorney was deficient in failing to object to those portions
of the video recording which depict testimonial statements by Dangerfield, as
well as to Murphys testimony regarding those same testimonial statements.  See
Martinez v. State, 275 S.W.3d 29
(Tex. App.San Antonio 2008, no pet.) (statements made in response to further
police-initiated questioning without the presence of an attorney are
inadmissible).  

            The
video recording, played in its entirety to the jury without objection,
illustrates Dangerfield providing Murphy with incriminating responses to Murphys
questions.[10]  Murphys testimony repeats these same
responses.  We must determine whether
counsels conduct in not objecting to this evidence falls below an objective
standard of reasonableness.[11]  For purposes of our analysis, we will assume
the evidence in question was inadmissible.  
We observe that mere identification of instances in which counsel did
not make an evidentiary objection, without more, does not establish deficient
performance of counsel for the purposes of an ineffective assistance
claim.  See, e.g., Thomas v. State,
886 S.W.2d 388, 392 (Tex. App.Houston [1st Dist.] 1994, pet. refd) (Failure
to object to inadmissible testimony can constitute a sound and plausible trial
strategy.).

            Counsels
reasons for not objecting do not appear in the record on direct appeal.   Where an appellate record is silent as to
why trial counsel failed to take certain actions, the appellant has failed to
rebut the presumption that trial counsels decision was in some waybe it
conceivable or notreasonable.[12]  See Mata v. State, 226 S.W.3d 425, 431
(Tex. Crim. App. 2007); see also Thompson,
9 S.W.3d at 814 (if record is silent as to attorneys particular course of
action, defendant did not rebut presumption). 
The Texas Court of Criminal Appeals has set the bar very high for
finding counsel ineffective, without a hearing explicitly demonstrating inaffectiveness.  Goodspeed,
187 S.W.3d at 394 (failure to conduct voir dire examination when defendant was
eligible for community supervision found not to be ineffective; using two peremptory
challenges on jurors already excused by court found not harmful).  The ineffectiveness of counsel must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  See Smith
v. State, 51 S.W.3d 806, 813 (Tex. App.Texarkana 2001, no
pet.).  This failure to object to
Dangerfields statements should be viewed in the context of the trial.  At that time, evidence had been presented
that during the initial investigation at the scene of the arrest, Dangerfield
volunteered to Murphy that he was drunk. 
Further, there was abundant physical evidence of his intoxicated
state.  We cannot say that counsels
conduct in failing to object to the complained-of evidence was so outrageous
that no competent attorney would have engaged in it.  Goodspeed,
187 S.W.3d at 392; we therefore conclude that Dangerfield failed to meet his
burden to show trial counsels performance fell below an objective standard of
reasonableness by not objecting to this evidence.

            Dangerfield
next asserts that his attorney was ineffective because he failed to object to
the audio portion of the video recording showing Dangerfields repeated
requests for counsel.  Evidence showing a
defendant invoking his right to counsel is inadmissible at trial.  Hardie
v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991); Loy v. State, 982 S.W.2d 616, 617 (Tex. App.Houston [1st Dist.]
1998, pet. refd).  

            As
in this case, the jury in the Loy
case was permitted to see and hear a video recording showing the defendant
invoking his right to counsel several times. 
Because the defendant clearly invoked his right to counsel, evidence
showing that invocation was inadmissible. 
Loy, 982 S.W.2d at 617.  In this case, Dangerfields counsel failed to
object to the invocation of his clients repeated requests for counsel, as
depicted on the video recording played to the jury.  That failure does not dictate the conclusion,
as Dangerfield asserts, that his counsel was thereby ineffective.  

            Again, the
record is devoid of evidence revealing counsels reasons for not objecting to
this portion of the video recording.  It
is conceivable that counsel concluded it was best to allow the jury to hear
such request for counsel in an attempt to persuade the jury that Dangerfield
was denied his constitutional right in that respect and, therefore, perhaps in
other ways.   In the absence of evidence
for counsels reasoning, and in the lack of anything that would indicate such
completely ineffective assistance as could be shown without such a record, we
are compelled to conclude on this point as well that Dangerfield failed to meet
his burden to show trial counsels performance fell below an objective standard
of reasonableness by not objecting to those portions of the video recording
depicting Dangerfields invocation of his right to counsel.

            Dangerfields
final contention with respect to his ineffective assistance claim centers on
the fact that his trial counsel did not object to Pillars testimony regarding
the cause of Dangerfields automobile accident, resulting in his car being high
centered on a guardrail.  In this regard,
Pillars testified that Dangerfield crossed all the lanes, into oncoming
traffic and hit[s] the guardrail. 
Pillars testified that he did not observe any other vehicles in that
intersection when this happened.[13]  

             Dangerfield claims that Pillars was not
qualified to testify regarding the cause of the accident, since his education
and training were limited to basic police academy training.  We initially observe that Pillars testimony
regarding the accident was primarily factual, and thus not properly classified
as expert testimony.[14]  Counsels failure to object to admissible
testimony does not constitute ineffective assistance.  See
Rodriguez v. State, 975 S.W.2d 667, 674 (Tex. App.Texarkana 1998, pet. refd).   

            Assuming a
part of Pillars testimony was inadmissible based on his lack of expert
qualification, we cannot conclude trial counsel was thereby ineffective.  As stated earlier, the fact that counsel did
not make an evidentiary objection, without more, does not establish deficient
performance for the purpose of an ineffective assistance claim.  Thomas,
886 S.W.2d at 392. Moreover, as with Dangerfields first three claims of
ineffective assistance, counsels reasons for not objecting do not appear in
the record on direct appeal.  We must
therefore conclude that Dangerfield failed to meet his burden to show trial
counsels performance fell below an objective standard of reasonableness by not
objecting to those portions of Pillars testimony now claimed to be
objectionable.  

            We overrule
Dangerfields claims of ineffective assistance of counsel.

 

            C. 
The Evidence Is Legally and Factually Sufficient to Support Conviction

 

            In his final point of error,
Dangerfield claims the evidence is legally and factually insufficient to
support conviction.  The State responds
that the essential elements of the offense were proven beyond a reasonable
doubt.   Dangerfield does not challenge
the jurisdictional element as to the two prior DWI convictions.[15]
 The record demonstrates that he stipulated
to the two prior DWI convictions. 

            We review the legal and factual
sufficiency of the evidence supporting a conviction under well-established
standards.  In conducting a legal
sufficiency review, we consider the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).  We must give
deference to the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 31819 (1979)).  We are not required to determine whether we
believe that the evidence at trial established guilt beyond a reasonable doubt;
rather, when faced with conflicting evidence, we must presume that the trier of
fact resolved any such conflict in favor of the prosecution, and we must defer
to that resolution.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993). 
In conducting a factual sufficiency review, we consider the evidence in
a neutral light.  Watson v. State,
204 S.W.3d 404, 41415 (Tex. Crim. App. 2006). 

            We may find evidence factually
insufficient in two ways:  (1) the
evidence supporting the conviction is too weak to support the fact-finders
verdict, or (2) considering conflicting evidence, the fact-finders verdict is
against the great weight and preponderance of the evidence. Laster, 275
S.W.3d at 518.  In so doing, we may find
the evidence insufficient when necessary to prevent manifest injustice.  Id. 
Although we give less deference to the verdict in a factual sufficiency
review, we will not override the verdict simply because we disagree with
it.  Id.  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273
S.W.3d 273, 280 (Tex. Crim. App. 2008).

            A person commits the offense of
driving while intoxicated if he or she operates a motor vehicle in a public
place without the normal use of mental or physical faculties due to the
introduction of alcohol or other substances into the body.  Tex.
Penal Code Ann. §§ 49.01(2)(A), 49.04(a) (Vernon 2003).  Under a hypothetically correct charge in this
case, the jury was required to find, beyond a reasonable doubt, that (1)
Dangerfield, (2) operated a motor vehicle, (3) in a public place, (4) without
the normal use of mental or physical faculties, (5) due to the introduction of
alcohol or other substances into the body, while (6) previously having been convicted
two times of an offense related to operating a motor vehicle, aircraft or
watercraft while intoxicated.  Tex. Penal Code Ann. §§ 49.01(2)(A),
49.04(a) and 49.09(b).

            Dangerfield contends there is no
evidence that he actually operated a motor vehicle in a public place while
intoxicated.  In other words, the mere
fact that he may have been behind the steering wheel of the automobile when
Pillars arrived at the accident scene does not establish that he was
intoxicated while driving.  In support of
this position, Dangerfield points to the fact that Pillars did not see the
accident, nor did he see Dangerfield operating his vehicle.  In the present case, however, Dangerfield
admitted to Pillars that he was the driver of the vehicle involved in the
accident.  In addition, as in this case, appellants
presence behind the steering wheel . . . support[ed] an inference that the
accident had occurred a short time previously. 
See Kuciemba v. State, 310 S.W.3d 460, 463 (Tex. Crim. App.
2010).  The Kuciemba court further
determined that

in order for the evidence to be sufficient to
support a conviction for driving while intoxicated, there must be a temporal
link between a defendants intoxication and his driving.  But a conviction can be supported solely by
circumstantial evidence. Circumstantial evidence is as probative as direct
evidence in establishing the guilt of an actor and the standard of review on
appeal is the same for both direct and circumstantial evidence cases.  Being intoxicated at the scene of a traffic
accident in which the actor was a driver is some circumstantial evidence that
the actors intoxication caused the accident, and the inference of causation is
even stronger when the accident is a one-car collision with an inanimate
object.

 

Id. at 462
(citations omitted).  The accident at
issue here was a one-car collision, as in Kuciemba.  Moreover, Pillars found no evidence that
Dangerfield applied the brakes prior to the accident.  A drivers failure to brake also provides
some evidence that the accident was caused by intoxication.  Kirsch
v. State, 306 S.W.3d 738, 746, 746 n.26 (Tex. Crim. App. 2010) (citing Sierra v. State, 280 S.W.3d 250, 256
(Tex. Crim. App. 2009)). 

            Finally,
Caleb Peek, an eyewitness to the accident, testified that he saw a motor
vehicle go up the guardrail and hit the pillar. 
Pillars testified that he saw a puff of smoke come from underneath the
Loop on the east side.  When he arrived
at the accident scene, Pillars found the vehicle high centered on the guardrail
and observed Dangerfield in the drivers seat. 
As summarized here, the circumstantial evidence is both legally and
factually sufficient to support the determination that Dangerfield operated a motor vehicle in a public place.  As discussed below, the evidence is likewise
legally and factually sufficient to prove beyond a reasonable doubt that
Dangerfield was intoxicated at the time of the accident. 

            Dangerfield claims he was not
intoxicated at the time of the accident; rather, he maintains that he lacked
the normal use of his mental and physical faculties for a different
reason.  In support of this contention,
Dangerfield relies on Vasquez v. State, 166 Tex. Crim. 89, 311 S.W.2d
828 (1958).  In that case, the
investigating officer initially encountered the defendant lying unconscious in
a hospital bed smelling of beer.  Id.
at 829.  Because the only witness who
expressed the opinion that the appellant was intoxicated based his opinion on
facts which were as consistent with injury as with intoxication, the court
determined that the evidence was insufficient to support conviction. 

            This case is easily
distinguished from Vasquez.  Here,
Pillars arrested Dangerfield at the scene of the accident, at which time
Dangerfields breath carried a strong odor of alcohol, and an open can of cold
beer was found in his car.  Dangerfield
was unsteady on his feet, was wearing only one shoe, and began urinating on the
side of the road and then on himself. 
Dangerfield claimed to be uninjured, and Pillars did not observe any injuries
to Dangerfield when Dangerfield exited the vehicle.  Dangerfield refused to perform standardized
field sobriety tests.  Pillars testified
that he believed Dangerfield to be intoxicated based on a very strong odor of
alcohol coming from his breath, bloodshot eyes, unsteady balance, incoherent
statements, and lack of coordination. 
Murphy also testified that in his opinion, Dangerfield was very
intoxicated.  This opinion was based on
the odor of alcohol on Dangerfields breath, his actions and overall speech as
well as his appearance and demeanor.  The
testimony of an officer that a person is intoxicated provides sufficient
evidence to establish the element of intoxication.  Hartman v. State, 198 S.W.3d 829, 835
(Tex. App.Corpus Christi 1996, pet. struck). 
In addition, the jury may consider the defendants refusal to submit to
a breath test, as in this case, as evidence of DWI.  See Bright v. State, 865 S.W.2d 135, 137
(Tex. App.Corpus Christi 1993, pet. refd); see also Tex. Transp. Code Ann. § 724.061
(Vernon 1999) (evidence defendant refused breath test may be introduced into
evidence at trial).

            While there was testimony that
Dangerfield had a stroke in 1998 that left him with a speech impediment of
stuttering when he is angry, that he slurs his speech, that his eyes were
bloodshot at trial and there was no odor of alcohol on his breath at that time,
and that he was involved in a violent collision that could have caused a period
of disorientation, we must presume that the trier of fact resolved any such
conflict in favor of the prosecution, and we must defer to that
resolution.  Turro, 867 S.W.2d at
47.  The evidence supporting the
conviction is not too weak to support the fact-finders verdict.  Further, when considering the conflicting
evidence, the verdict is not against the great weight and preponderance of the
evidence.  Dangerfields legal and
factual insufficiency claims are overruled.

III.     CONCLUSION

 

            We affirm the judgment of the trial
court.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          July
19, 2010   

Date Decided:             August
4, 2010

 

Do Not Publish           

 

 

 

 

 

 

 

 

 











[1]Tex. Penal Code Ann. § 49.09 (Vernon
Supp. 2009).

 





[2]Pillars
is a certified peace officer for the State of Texas employed by the City of
Paris Police Department.  





[3]While
Pillars patrol vehicle is equipped with an in-car camera, the video portion of
the camera was not working at the time of Dangerfields arrest, and the events
described here were not recorded on video. 
Because the audio portion of the in-car camera was functional, an audio
recording of these events exists, although the quality of the recording is
poor.  

 





[4]Murphy
is a certified peace officer for the State of Texas and is employed as a patrol
officer for the City of Paris Police Department.  Murphy is also certified by the State as an
Intoxilyzer operator.  

 





[5]Section
724.015 of the Texas Transportation Code sets forth the information which must
be provided to a person before the taking of a specimen, advising, among other
things, of the penalties for refusing to provide a specimen.  Tex.
Transp. Code Ann. § 724.015 (Vernon Supp. 2009).

 





[6]Miranda v. Arizona, 384 U.S. 436 (1966).

 





[7]Dangerfield
made such comments as, [F]orget all that, [W]e dont have nothing else to
talk about, and [there is] nothing else to talk about.  





[8]Dangerfield
contends that his right to counsel under Article One, Section 10 of the Texas
Constitution was violated.  He fails to
brief this point of error, or to explain how the United States and Texas Constitutions
differ with respect to the invocation of the right to counsel.  Therefore, we do not address this point of
error.  See Tex. R. App. P. 38.1(h), (i).

 





[9]The
Texas Court of Criminal Appeals has provided a nonexclusive list of fundamental
errors:  (1) denial of the right to
counsel; (2) denial of the right to a jury trial; (3) denial of ten days
preparation before trial for appointed counsel; (4) absence of jurisdiction
over the defendant; (5) absence of subject matter jurisdiction; (6) prosecution
under a penal statute that does not comply with the separation of powers
section of the state constitution; (7) jury charge errors resulting in
egregious harm; (8) holding trials at locations other than the county seat; (9)
prosecution under an ex post facto law; and (10) comments by a trial judge that
taint the presumption of innocence.  Saldano v. State, 70 S.W.3d 873, 886
(Tex. Crim. App. 2002); 4 Frank Maloney, et al., Texas Criminal Practice Guide § 90.03 (2010).  The Texas Court of Criminal Appeals has
differentiated between structural errors which affect the framework of the
trial (for which no harm analysis is necessary) and systemic errors which
involve absolute requirements or prohibitions. 
The court has a duty to protect this systemic right or apply the law
absolutely, and a party may complain for the first time on appeal, but the
systemic requirement is subject to a review to determine harm.  Mendez, 138 S.W. 3d at 34041.  In Marin
v. State, 851 S.W. 2d 275 (Tex. Crim. App. 1993), overruled on other grounds by Cain
v. State, 947 S.W.2d 262 (Tex. Crim. App. 1997), the court explained that
the systemic requirement is absolute, whereas other rights may be expressly
waived and still others may be forfeited unless asserted.  Id.
at 279.  The term fundamental error has
been used to describe complaints that may be first raised on appeal, but now
that concept is considered in the Marin
framework.  Mendez, 138 S.W.3d at 341.  

 





[10]A
snapshot of the conversation between Murphy and Dangerfield is reflected in
Murphys trial testimony:

 

[COUNSEL]:  What question did you just ask him? 

 

MURPHY:  I asked him if hed been drinking.

 

[COUNSEL]:  What was his response to you?

 

MURPHY:  He said I knew hed been drinking
earlier.  

 

                .
. . .

 

[COUNSEL]:  Okay. 
He admitted to you that he had been drinking a little all that day,
didnt he?

 

MURPHY:  He stated hed been drinking pretty much all
day, at another point said hed been drinking since one oclock.  He said he had been consuming and drinking
all night.  Later on, said he had stopped
drinking around 6:00.

 

[COUNSEL]:  What did he tell you he had been drinking?

 

                .
. . . 

 

MURPHY:  Said hed been drinking beer and
whiskey.  When I asked him specifically
which kind, he stated Bush [sic] and Canadian Hunter.

 

[COUNSEL]:  When you asked him when the last time he had
any insulin injections or whatever, do you recall what he said to you?

 

MURPHY:  He said it had been two weeks.  He said he had not been taking it because he
ha[d] been drinking.  

 





[11]The
State contends Dangerfield waived his right to counsel by initiating
communications with Murphy.  In light of
our decision, we do not find it necessary to address this issue.

 





[12]Under
normal circumstances, the record on direct appeal will not be sufficient to
show that counsels representation was so deficient and so lacking in tactical
or strategic decision-making as to overcome the presumption that counsels
conduct was reasonable and professional. 
Mallett v. State,
65 S.W.3d 59, 69 (Tex. Crim. App. 2001); Fuller
v. State, 224 S.W.3d 823, 82829 (Tex. App.Texarkana 2007, no pet.).  In addressing this reality, the Texas Court of
Criminal Appeals has explained that appellate courts can rarely decide the
issue of ineffective assistance of counsel because the record almost never
speaks to the strategic reasons that trial counsel may have considered.  The proper procedure for raising this claim
is therefore almost always habeas corpus. 
Freeman v. State,
125 S.W.3d 505, 506 (Tex. Crim. App. 2003); Aldrich v. State, 104 S.W.3d 890, 896 (Tex. Crim.
App. 2003).





[13]The
remainder of Pillars testimony on this issue is fairly summarized as
follows:  Dangerfield struck the
guardrail when he went under the Loop; Dangerfield stated that he was going
fifty-five miles per hour; the speed limit was forty miles per hour; there were
no brake or yaw marks in the area of the accident; Pillars did not locate any
obstruction in the roadway that would have caused Dangerfield to swerve;
Dangerfield said nothing at the accident scene about a blue van swerving in
front of him; the issue of the blue van came up only after Dangerfield was
arrested and taken into custody; if a vehicle pulled out of the Exxon station
going north, it would not be in Dangerfields traffic lane; if a van pulled out
of the Exxon station going south, it would be going in the same direction as
Dangerfield; if a vehicle pulled out in front of Dangerfield, it would cause
his car to veer away from the point where the accident occurred; often, when a
car pulls out in front of another car, the driver of the second car will hit
their brakes; Pillars was never provided with information that another vehicle
was involved in this accident; Pillars saw no evidence of another vehicle;
Dangerfield was going to take the turn and go up the on-ramp to the Loop; he did
not know where he was and turned early; Dangerfield was close to the off-ramp
for westbound traffic; and if he had gone that way, he would have been going
the wrong way. 

 





[14]Rule
702 of the Texas Rules of Evidence provides:

 

If scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training or education may testify
thereto in the form of an opinion or otherwise.

 

Tex.
R. Evid. 702.





[15]There are three grades of the offense of DWI.  The difference between the grades is set by
the number of prior convictions for certain intoxication-related offenses. The
prior intoxication-related offenses are elements of the offense of DWI.  Gibson
v. State, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999). They define the
offense as a felony and are admitted into evidence as part of the States proof
of its case-in-chief during the guilt/innocence stage of the trial.  Id.