**Opinion issued October 11, 2012**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-10-00247-CR

—————————————

**CHERYL MARIE VIERLING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 5**
**Harris County, Texas**
**Trial Court Case No. 159464401010**

---

## MEMORANDUM OPINION

Convicted by a jury of the misdemeanor offense of driving while intoxicated, and sentenced to 180 days, probated for one year, Cheryl Marie Vierling maintains that the trial court erred by (1) denying her motion to suppress,

(2) admitting her refusal to submit to a portable breath test, (3) admitting the testimony of two witnesses who were not disclosed prior to trial, and (4) denying a mistrial when the evidence published to the jury contained an invocation of her right to counsel.

Additionally, Vierling argues that (5) the jury charge was improper and resulted in egregious harm, (6) an improper jury argument by the State tainted the presumption of innocence, and (7) the trial court abused its discretion during sentencing when it required Vierling to use an interlock device.

We affirm the trial court's judgment.[1]

### Background

Texas Department of Public Safety Trooper Gens began following Vierling's vehicle at 2 AM after he spotted it "drifting to the left going down the center stripe." Gens testified that he witnessed Vierling violate several traffic laws as he followed her, including failure to drive in a single marked lane and driving in a no-passing zone. Her tires crossed the yellow line several times.[2]

---

[1] Vierling also complained that the trial court erred in failing to submit findings of fact and conclusions of law following its denial of her motion to suppress. We abated the appeal in order for the trial court to do so and we reinstated the appeal once a supplemental record was filed with this Court containing the requested findings of fact and conclusions of law.

[2] Although Gens testified that Vierling never used her turn signal, he corrected his testimony on cross-examination after a dashcam video refreshed his memory.

2

When he began following Vierling, Gens turned on his dashboard camera and a redacted version of that video was played for the jury as Gens pointed out each violation using a laser pointer. At the first intersection, she made a wide right turn, again crossing the double stripes. Her vehicle continued to drift from side to side within the same lane of traffic, occasionally driving on or over the center stripe. Gens did not stop her at that point because they were about to drive onto a bridge and the conditions were unsafe to do so. He witnessed several more violations on the bridge, including "riding the center stripe" and driving in a no-passing zone. After four minutes and fifteen seconds of following Vierling, Gens concluded that she was possibly impaired. Once beyond the bridge, Gens turned on his overhead lights to alert Vierling to pull over. Gens noticed that Vierling "slurred" her speech, appeared "disoriented" and "confused," had an "odor of alcohol," and had "red, glassy eyes," all of which he considered signs of intoxication. Clearly upset, Vierling claimed that she was being stalked and was anxious to get home. When asked to get out of her car, she complied but continued to express concern about her stalker and Gens's seeming lack of concern about the stalker.

Vierling was asked to perform various field-sobriety tests, including the alphabet test, the Romberg test (maintaining balance standing with eyes closed), and the one-leg stand test. Vierling did not get past "g" in the alphabet test, had a

3

circular sway and unbalanced stance on the Romberg, and was unable to stand on one leg. Vierling informed the trooper that her high-heeled shoes were new and her knee injury prohibited a one-legged stance. She admitted to having had two or three drinks over the course of the night. After Vierling refused a portable breath test, Gens told Vierling that she was under arrest, cuffed her, and seated her in the patrol car. Gens drove her to the police substation where she was read her rights on videotape and asked to perform additional sobriety tests. This video, too, was played for the jury and recorded her poor performance of the walk-and-turn and the one-leg stand exercises.

At trial, the State's offer of business records from two bars Vierling had patronized that night were objected to on the basis of insufficient notice. The defense, however, thereafter admitted to having been provided one of the receipts via discovery and further acknowledged that calling the custodian of records for the receipts would defeat the notice concern under Texas Rule of Evidence 902.

Dietz from the Tin Cup Sports Bar then testified for the State that Vierling was a regular customer and authenticated a receipt from the night of the arrest for one Grey Goose Cosmo—a vodka, triple sec, and cranberry juice drink. At the conclusion of Dietz's direct examination, when the State attempted to elicit testimony about Vierling's conduct at the bar, Vierling objection that Dietz was not

listed on the State's witness list was sustained as to testimony beyond the scope of authentication of the receipt.

Similarly, when Watson, manager of JT's Sports Bar, authenticated a receipt documenting that Vierling bought two alcoholic beverages at her bar, Vierling's objection that Watson was not a listed witness was sustained, but the court allowed her testimony as an authentication witness with respect to the business record.

At the conclusion of the testimony, Vierling moved to suppress the evidence obtained as a result of the traffic stop, citing an absence of probable cause and claiming the video contradicted Trooper Gens's testimony. After watching the video again, the court denied the motion. Vierling's requested findings of fact and conclusions of law. The court requested proposed findings from both parties, but did not state the basis for her ruling on the record.

Vierling's motion for an instructed verdict was denied. At the charge conference, Vierling proposed an article 38.23 instruction, which the trial court gave over the State's objection. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Vierling made no objections to the charge, nor requested any amendment thereto. The State rested, and Vierling rested without presenting any evidence.

The jury found Vierling guilty of the misdemeanor offense of driving while intoxicated, and the trial court assessed her punishment as 180 days in jail probated for one year, per Vierling's agreement with the State. Vierling appealed. We

abated the appeal in order for the trial court to make findings of fact and conclusions of law with respect to its denial of her motion to suppress, and we reinstated the appeal once a supplemental record was filed with this Court containing the requested findings of fact and conclusions of law.

The trial court found, *inter alia,* that Trooper Gens was a credible witness with over twenty-five years experience, including over 1,000 arrests of intoxicated drivers. The trial court also found that Gens observed Vierling cross the yellow stripe of a no-passing zone, and thus had lawful authority to conduct a traffic stop. *See* TEX. TRANSP. CODE ANN. § 545.055(b) (West 2011) (prohibiting driver from driving on left side of any pavement striping marking no-passing-zone); *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (holding that even if arresting officer had second subjective reason for stopping vehicle, trial court erred in suppressing evidence because officer had objective reason for arrest when defendant failed to stop at stop sign); *Coleman v. State*, 188 S.W.3d 708, 716 (Tex. App.—Tyler 2005, pet. ref'd) (holding officer's decision to stop motorist reasonable when officer has probable cause to believe that traffic violation has occurred).

The trial court also found that Trooper Gens did not stop Vierling's vehicle after her first set of traffic violations because they were crossing the bridge over Lake Houston and it would not have been a safe place to conduct standardized

6

field-sobriety tests or a traffic stop. The court further found that Gens waited to conduct the traffic stop until they reached a well-lit parking lot and that the delay in stopping Vierling's vehicle was reasonable and was conducted within a reasonable time and distance from the traffic violations.

## Discussion

### A. Motion to Suppress

In her first issue on appeal, Vierling contends that the trial court erred in denying her motion to suppress the traffic stop. Specifically, Vierling argues that the trooper lacked reasonable suspicion to believe that she had violated section 545.060 of the Transportation Code because weaving within the lane is not a traffic violation and because her driving was not unsafe. *See* TEX. TRANSP. CODE ANN. § 545.060 (West 2011). She further contends that, even if she did commit a traffic violation, the court's denial of her motion to suppress was still error because Gens did not initiate the traffic stop within a reasonable time and distance after the alleged violation.

Filing a motion to suppress alone does not preserve any error in the admission of the evidence sought to be suppressed. *Coleman v. State*, 113 S.W.3d 496, 499–500 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 145 S.W.3d 649 (Tex. Crim. App. 2004). If a motion to suppress has yet to be ruled on when the evidence is offered at trial, in order to preserve error a defendant must

7

object to the evidence at the time it is offered. *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984). Just as an objection or motion to suppress made after the evidence or substantial testimony about the evidence has already been admitted without objection is untimely, *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. 1980), *Stults v. State*, 23 S.W.3d 198, 205–06 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd), *Laurant v. State*, 926 S.W.2d 782, 783 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd), a motion to suppress urged after the State has rested and the challenged evidence admitted without objection is too late to preserve error. *Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. [Panel Op.] 1981); *Sims v. State*, 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

Noncompliance with this rule is excused when, and only when, the trial court makes specific pretrial comments that "essentially [direct the defendant] to wait until all the evidence [is] presented" before seeking a ruling from the court on the motion to suppress and has told the defendant that it would "make no ruling until all the testimony had been presented." *Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004). It is additionally clear that once a defendant affirmatively states that he has "no objection" to the admission of the item sought to be suppressed, any complaint as to its admission is waived. *Moraguez v. State*, 701

8

S.W.2d 902, 904 (Tex. Crim. App. 1986); *Thomas v. State*, 312 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Although Vierling filed her motion to suppress on the first day of trial, she did not move to suppress the evidence obtained as a result of the traffic stop until after the State rested its case. Nor did Vierling object to Gens's testimony about the stop; and when the dashcam video depicting the stop was offered into evidence, Vierling's counsel stated: "Judge, just for the record, I don't have any objections to the predicate, so long as I'm not waiving any other objections I've made outside the presence of the jury." Too, when the video from the police sub-station was offered into evidence later that day, Vierling's counsel stated, "Judge, no objection to the predicate, subject to the objections we've already taken outside the presence of the jury." The appellate record also contains no pretrial remarks by the trial court indicating that the narrow exception in *Garza* is applicable.

Accordingly, we hold that Vierling failed to preserve any error for our review with respect to the trial court's ruling on her motion to suppress. *See* TEX. R. APP. P. 33.1(a)(1); *Moraguez*, 701 S.W.2d at 904; *Nelson*, 626 S.W.2d at 536; *Marini*, 593 S.W.2d at 714; *Thomas*, 312 S.W.3d at 736; *Stults*, 23 S.W.3d at 205–06; *Laurant*, 926 S.W.2d at 783; *Sims*, 833 S.W.2d at 284.

We overrule Vierling's first issue.

9

**B. Admission of Refusal to Submit to Portable Breath Test**

Vierling's second issue contends that the admission of her refusal to take a portable breath test was error. Assuming without deciding, that the admission of Vierling's refusal to take the test was error, that error would be non-constitutional in nature and subject to analysis under Texas Rule of Appellate Procedure 44.2(b). *See Kamen v. State*, 305 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.], 2009, pet. ref'd) (applying nonconstitutional harm analysis to erroneous admission of evidence pertaining to field-sobriety test).

Nonconstitutional error must be disregarded unless it affects substantial rights of the defendant. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A conviction should not be overturned for such error unless this Court, after examining the record as a whole, has fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93. In other words, we must reverse a conviction for nonconstitutional error if we have "grave doubt" about whether the result of the trial was free from the substantial influence of the error. *Id.* at 94. "'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels

himself in virtual equipoise as to the harmlessness of the error.'" *Id.* (quoting *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002)).

In assessing potential harm, we focus not on whether the outcome of the trial was proper despite the error, but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Id.* at 93–94. In making this evaluation, we may consider several factors, including the evidence introduced at trial, the nature of the evidence supporting the verdict, the character of the alleged error, the jury instructions, the State's theory and any defensive theories, closing arguments, and whether the State emphasized the error. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

Here, the evidence supporting Vierling's guilt included her inability to drive within her lane or signal a lane change; Gens's testimony that she seemed confused and disoriented, smelled of alcohol, and had red, glassy eyes when he first encountered her; her slurred speech; her fluctuating moods—ranging from belligerent to morose and back again; her admitted consumption of alcohol that night; and other indications noted while performing the various field-sobriety tests, including her inability to recite the alphabet, her inability to complete the walk-and-turn test and one-leg stand test, and her swaying during the Romberg and other tests. While much of this evidence was attested to by Gens during his testimony, the video published to the jury provided corroborating and independent evidence

11

upon which the jury could have rested its determination that Vierling was intoxicated.

A review of the entire trial shows that Vierling's refusal to take the portable breath test was simply one of a long series of transactions between Vierling and Gens and a small part of the State's case against Vierling. Although the State mentioned Vierling's refusal to take the Intoxilyzer test at the station in its opening—an undisputedly admissible statement—the State thereafter never specifically mentioned the portable breath test or Vierling's refusal to take the test. Instead, the State focused on Vierling's overall demeanor and performance on the field-sobriety tests as evidence of the loss of use of her normal mental and physical faculties.

Our review of the entire record, fairly assures this Court that the admission of Vierling's refusal to take the portable breath test had no substantial and injurious effect or influence in determining the jury's verdict and, thus, did not affect any of Vierling's substantial rights. *See Barshaw*, 342 S.W.3d at 93–94; *King*, 953 S.W.2d at 271.

We overrule Vierling's second issue.

### C. Undisclosed Witnesses

Vierling further cites as error the admission of testimony from two witnesses not disclosed prior to trial. Dietz and Watson both testified for the State to

12

authenticate receipts from the bars at which they worked to prove the number of drinks purchased by Vierling. Vierling claims that the trial court abused its discretion in allowing the testimony because the prosecutor acted in bad faith in failing to disclose the witnesses, and without proper notice she could not have reasonably anticipated their testimony. Vierling objected to both witnesses on the grounds that neither were named on the witnesses list. By not seeking a continuance to prepare for their cross-examinations, however, the error, if any, was rendered harmless. *See Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994).

We overrule Vierling's third issue.

### D. Denial of Mistrial

Vierling's fourth issue contends that the trial court erred in denying her request for a mistrial when the evidence published to the jury contained an invocation of her right to counsel.

Before trial began, Vierling objected to the audio portions of the station video that included several invocations of her right to counsel, as well as all audio portions of the video occurring after Trooper Gens read Vierling her *Miranda* rights. The court granted Vierling's pretrial motion to exclude those portions of the video, pursuant to which the parties agreed to redact the excluded audio portions from the station video before publishing it to the jury. The State redacted

13

the video, and trial counsel claimed to have viewed the video in which the invocation had been redacted, but when the State published the video, it included the statement, "I want to talk to my attorney." Trial counsel objected, and the trial court offered to immediately "instruct [the jury] to disregard that statement and not consider it for any purpose whatsoever or we can leave it alone and not draw more attention to it or we can do whatever you want within reason."

Trial counsel moved for a mistrial contending that any instruction to disregard the statement would not only fail to cure the error, but draw even more attention to it. Vierling's objection was sustained but her motion for a mistrial denied. The court again expressed its willingness to instruct the jury to disregard the statement for all purposes but defense counsel declined to so move.

A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The particular facts of the case determine whether an error requires a mistrial. *Id.* A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

A trial court's denial of a motion for a mistrial is reviewed for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view

14

the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of its ruling and we will uphold the ruling if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

The Court of Criminal Appeals has determined that the appropriate test for determining whether a trial court abused its discretion by denying a motion for a mistrial is a tailored version of the *Mosley* test according to which we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (citing *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998)); *Hawkins*, 135 S.W.3d at 77 (same).

Due to the extremity of the remedy, a mistrial should be granted only when less drastic alternatives have been explored (i.e., instructing the jury to disregard inadmissible evidence or comment) and residual prejudice yet remains. *See Ocon*, 284 S.W.3d at 884–85. While requesting lesser remedies is not a prerequisite to a motion for mistrial in all situations, when the movant fails to request a lesser remedy, we will not reverse the court's judgment if the less drastic alternative

15

could have cured the problem. *Ocon*, 284 S.W.3d at 885; *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004); *see also Wood*, 18 S.W.3d at 648 (concluding that trial court did not abuse its discretion in denying defendant's motion for mistrial when defendant had not requested less drastic remedy of continuance).

The State contends that Vierling is not entitled to a reversal on this ground because she declined the trial court's repeated offers of an instruction to disregard which would have cured the harm caused by the inadvertently disclosed invocation of right to counsel. Citing to this Court's opinions in *Loy v. State* and *Opp v. State*, Vierling argues that the error in permitting the jury to see her invocation of her right to counsel is a constitutional error warranting reversal because it cannot be said beyond a reasonable doubt that the error did not contribute to her conviction. Tex. R. App. P. 44.2(a); *Opp v. State*, 36 S.W.3d 158, 160 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Loy v. State*, 982 S.W.2d 616, 617 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). She further argues that an instruction to disregard the invocation of her right to counsel would not have cured the error, because such instruction would not safeguard against the possibility of the jury construing the invocation as evidence of guilt and, as such, a mistrial was the only means by which she could have been guaranteed that her constitutional rights were protected and a fair trial received.

16

Although true that the error of a jury witnessing a defendant's invocation of counsel is subject to Rule 44.2(a)'s constitutional-harm analysis, that issue is not before this Court. Unlike in *Opp* and *Loy*, the trial court in the present case *sustained* Vierling's objection. *See Archie*, 221 S.W.3d at 699–700 (stating that harmless-error analysis under Rule 44.2(a) is improper when trial court sustains objection but denies request for mistrial because only adverse ruling—denial of mistrial—is reviewed for abuse of discretion). The only issue with which we are presented is whether the denial of Vierling's motion for mistrial was an abuse of discretion. Although both *Opp* and *Loy* may inform our analysis with respect to this issue, neither case speaks directly to the pivotal, underlying question posed in the present case: Can the prejudicial effect associated with permitting a jury to see a defendant's invocation of counsel be cured by an instruction by the trial court to disregard it? *See id.* at 700 ("whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis") (quoting *Hawkins*, 135 S.W.3d at 77)).

Constitutional errors are not, *per se*, incurable. Prosecutorial comments on a defendant's failure to testify violate a defendant's Fifth Amendment right against self-incrimination, and like the publication of a defendant's invocation of his or her right to counsel, errors associated with such comments are subject to constitutional harm analysis under Rule 44.2(a). *See Lair v. State*, 265 S.W.3d 580, 590 (Tex.

17

App.—Houston [1st Dist.] 2008, pet. ref'd). This Court and others have held that such errors may be cured by an instruction by the trial court to disregard the comment. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (concluding that instruction to disregard cured harm from comment on defendant's failure to testify); *Longoria v. State*, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding instruction to disregard prosecutorial comment on defendant's failure to testify cured error); *Johnson v. State*, 83 S.W.3d 229, 231–33 (Tex. App.—Waco 2002, pet. ref'd) (holding trial court did not abuse its discretion in denying motion for mistrial because instruction to disregard prosecutorial question regarding defendant's failure to testify cured error); *Linder v. State*, 828 S.W.2d 290, 301 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (holding instruction to disregard prosecutorial comment on defendant's failure to testify cured error). When an instruction to disregard is given, we presume that the jury followed the instruction in the absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)).

In most instances, an instruction to disregard will cure the prejudicial effect. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). An instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrant improper conduct warrants reversal when there has been an

18

instruction to disregard. *Perez v. State*, 187 S.W.3d 110, 112–13 (Tex. App.—Waco 2006, no pet.) (citing *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)). Here, although the nature of the constitutional right affected by the publication of this part of the video to the jury was serious, the prejudicial effect was lessened by the absence of flagrancy and persistency. *See Perez*, 187 S.W.3d at 112–13. The publication of Vierling's statement to the jury was inadvertent and heard once, never again to be repeated nor referenced. Although the jury asked to watch the video during their deliberations, the error in this case (unlike in *Loy*), was not compounded because the jurors were only allowed to view the video in the courtroom with counsel and the judge present, and the inadmissible statement was muted. Under such circumstances, we cannot say that an instruction to disregard the comment would not have cured any prejudicial effect.

Because Vierling declined the offered instruction to disregard, which could have cured the error, she is not entitled to reversal here. *See Young*, 137 S.W.3d at 70 (holding that "an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse on an appeal by the party who did not request these lesser remedies in the trial court").

We overrule Vierling's fourth issue.

## E. Improper Jury Charge

The fifth issue argues for reversal based upon an improper jury charge which Vierling contends misstated the law and facts in dispute. Specifically, Vierling contends that the application section of the jury charge erroneously failed to instruct the jury that it should acquit her if it found that the stop was illegal because Trooper Gens did not have reasonable suspicion to believe that she "was weaving on a public roadway and that this weaving was unsafe." She further argues that the charge misstated the law and facts, and thus, failed to provide the jury with the proper basis to determine the legality of the stop beyond a reasonable doubt.

We review jury charge error in a two-step process. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* If so, we turn to the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.* If appellant did not make a proper objection at trial, appellant will obtain a reversal only if the error was so egregiously harmful that he has not had a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984 & 1985).

Article 38.23 provides that a jury is to be instructed to resolve factual disputes regarding whether evidence was obtained illegally and, therefore, inadmissible. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). A defendant's right to the

submission of jury instructions under article 38.23 is limited to disputed fact issues that are material to her claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden*, 242 S.W.3d at 510. Facts are material only when they are essential in deciding the lawfulness of the challenged conduct. *Id.* (stating that if other undisputed facts are sufficient to support lawfulness of challenged conduct, then disputed fact issue not material to ultimate admissibility of evidence and no instruction required). When no disputed material factual issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury and the legality of the conduct is determined as a question of law by the trial court. *Id.*

Vierling argues that she was entitled to the article 38.23 instruction because the evidence raised a disputed material fact (i.e., whether her driving supported Gens's reasonable suspicion that she failed to maintain a single lane and that she left the lane unsafely). Vierling further argues that the erroneous jury charge given caused her egregious harm because it misstated the law and the disputed facts, thereby precluding a valid finding beyond a reasonable doubt that the stop and her resulting arrest were lawful.

Gens testified that while he was following her, Vierling's multiple violations included driving to the left of a payment stripe designating a no-passing zone and failing to maintain a single, marked lane. The dashboard-mounted camera video

21

the jury watched showed Vierling's car made a wide right turn, and crossed over a yellow pavement stripe, and both of the car's driver-side tires drove to the left of that yellow stripe for several seconds. These undisputed facts illustrate the traffic violation that Gens's witnessed. *See* TEX. TRANSP. CODE ANN. § 545.055(b) (stating driver may not drive on left side of any pavement striping marking no-passing zone). Therefore, Gens had probable cause to believe that a traffic violation had occurred and the stop was lawful. *See Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (stating that law enforcement officer may lawfully stop motorist when officer has probable cause to believe that traffic violation occurred).

Because the record reflects that the stop was supported by at least this one violation—traversing a no-passing stripe—and those facts are not disputed, other infractions (maintaining a single lane, leaving the lane unsafely, etc.) are immaterial with respect to the ultimate admissibility of the evidence discovered as a result of the traffic stop. Vierling, therefore, was not entitled to an article 38.23 instruction. *See Madden*, 242 S.W.3d at 510 (stating that if other undisputed facts are sufficient to support lawfulness of challenged conduct, then disputed fact issue is not material to ultimate admissibility of evidence and no instruction is required). As such, the stop's legality was not a factual question for the jury, but a question of law for the court to decide. *Id.*

We overrule Vierling's fifth issue.

## F. Improper Jury Argument

Vierling's sixth issue contends that an improper jury argument by the State tainted the presumption of her innocence. Specifically, she argues that the State commented at length during its closing argument about her failure to call any witnesses to testify about her alleged stalker, and thus, attempted to shift the burden of proof to her. Vierling concedes that she lodged no objection to these comments at trial, but maintains that because the comments tainted the presumption of her innocence, error was preserved even absent an objection. *See Blue v. State*, 41 S.W.3d 129, 133 (Tex. Crim. App. 2000) (plurality opinion holding that no objection was required to preserve error with respect to comments that tainted presumption of innocence and amounted to fundamental error of constitutional dimension); *see also* TEX. R. EVID. 103(d) (allowing appellate courts to take notice of fundamental errors affecting substantial rights). Even if the *Blue* plurality opinion was binding precedent, the State's comments here did not rise to the level of fundamental error. *See Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (stating that it is "well-settled" that State may comment on defendant's failure to call certain witnesses and that such comments are not impermissible attempt to shift burden of proof); *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (stating that plurality opinion in *Blue* is not binding

23

precedent).

We overrule Vierling's sixth issue.

## G. Interlock Device

Vierling contends in her sixth issue that the trial court abused its discretion by improperly intruding upon the plea-bargain process and imposing a condition of probation not previously agreed upon by the State and defense. Specifically, that by requiring an Interlock device to be installed on any vehicle that Vierling operated for a minimum of three months, the trial court exceeded the agreed community supervision she had reached with the State. Vierling, however, did not object at the time of her sentencing hearing to this new, additional condition. By failing to object, she failed to preserve error. *See* TEX. R. APP. P. 33.1(a); *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009).

We overrule Vierling's seventh issue.

## Conclusion

We affirm the judgment of the trial court.

Jim Sharp
Justice

Panel consists of Justices Keyes, Bland, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).

24