**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

3/9/15

**DORIAN E. RAMIREZ, CLERK**
BY DTello

ACCEPTED
13-14-00422-cr
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/9/2015 12:00:00 AM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00422-CR

### IN THE COURT OF APPEALS
### FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
### AT CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/8/2015 11:04:37 AM
VOID AM
DORIAN E. RAMIREZ
Clerk

| | | |
|---|---|---|
| **DYLAN A. TRISTANI** | § | **APPELLANT** |
| | § | |
| **VS.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/9/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

_____

### APPEAL FROM CAUSE NO. 2-100216
### IN THE COUNTY COURT AT LAW NO. 1
### OF VICTORIA COUNTY, TEXAS

_____

### APPELLANT'S BRIEF

_____

**NORMAN J. SILVERMAN**
**Texas Bar No. 00792207**
**917 Franklin, 4th Floor**
**Houston, Texas 77002**
**(713) 526-1515**
**(713) 526-1798 (FAX)**
**lawyernorm@msn.com**
**ATTORNEY FOR APPELLANT**

**APPELLANT REQUESTS ORAL ARGUMENT**

# Identity of Parties and Counsel

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Dylan A. Tristani            -         Appellant.

State of Texas            -         Appellee.

Norman J. Silverman       -         Appellant's retained counsel at trial
917 Franklin, 4th Floor                            and on appeal.
Houston, Texas 77002

Brent Dornburg           -         Appellant's retained counsel at trial.
120 N. Main St.
Victoria, Texas 77901

Jacqueline Johnson        -         Assistant District Attorneys at trial.
205 N. Bridge St., Suite 301
Victoria, Texas 77901

Allison Marek
205 N. Bridge St., Suite 301
Victoria, Texas 77901

Stephen B. Tyler          -         District Attorney on appeal.
205 N. Bridge St., Suite 301
Victoria, Texas 77901

Hon. Travis H. Ernst        -         Trial Judge.

# Contents

*Page*

Identity of Parties and Counsel ................................................................. ii

Table of Contents ................................................................................ iii

List of Authorities ...............................................................................iv

Statement of the Case ...........................................................................1

Statement Regarding Oral Argument ..........................................................1

Issues Presented...................................................................................2

      Issue One:  The trial court erred in admitting evidence of Appellant's
      post-*Miranda* invocation of the right to counsel, in violation of due
      process.

      Issue Two:  The trial court erred in prohibiting a proper voir dire
      question concerning prior experience with assessing punishment.

Summary of the Arguments .....................................................................2

Background Facts..................................................................................3

Arguments and Authorities ......................................................................8

      Issue One:
      Erroneous Admission of Invocation of the Right to Counsel .........................8

          A.  Facts...............................................................................8

          B.  The admission of Appellant's invocation violated
             due process. ..................................................................9

          C.  The error was harmful, requiring reversal. ..................................15

Issue Two:
Erroneous Prohibition of a Proper Voir Dire Question.................................19

     A.  Facts.................................................................................................19

     B.  The trial court abused its discretion in prohibiting
        a proper question. ............................................................................20

     C.  Reversal is required .........................................................................23

Prayer ...............................................................................................................30

Certificate of Service.......................................................................................31

Certificate of Compliance ...............................................................................31

## List of Authorities

**Cases:**

*Blackman v. State*, 414 S.W.3d 757 (Tex. Crim. App. 2013) ............................20, 21

*Brooks v. State*, 132 S.W.3d 702 (Tex. App.-Dallas 2004, pet. ref'd) ....................16

*Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997) ..........................................26

*Caldwell v. State*, 818 S.W.2d 790 (Tex. Crim. App. 1991) ...................................20

*Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995). ...................................20

*Chapman v. United States*, 547 F.2d 1240 (5th Cir. 1977) .....................................18

*Clay v. State*, 240 S.W.3d 895 (Tex. Crim. App. 2007) ..........................................15

*Comeaux v. State*, 445 S.W.3d 745 (Tex. Crim. App. 2014) ............................28, 29

*Cooper v. State,*
961 S.W.2d 222 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd) ...............10, 11

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) ........................................12

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) ....................................12

*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) .................10, 11

*Dumas v. State*, 812 S.W.2d 611 (Tex.App.—Dallas 1991, pet. ref'd) .............14, 17

*Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014) ................................*passim*

*Espinosa v. State,*
653 S.W.2d 446 (Tex. App.—San Antonio 1982) (op. on reh'g),
*aff'd,* 669 S.W.2d 736 (Tex. Crim. App. 1984) ....................................................21

*Gonzales v. State*, 2 S.W.3d 600 (Tex. App.-Texarkana 1999, pet. ref'd) ..............25

*Gray v. State*, 986 S.W.2d 814 (Tex. App.-Beaumont 1999, no pet.) ...............10, 11

*Griffith v. State*, 55 S.W.3d 598 (Tex. Crim. App. 2001) ......................................10

*Hardie v. State*, 807 S.W.2d 319 (Tex. Crim. App. 1991) ..............................*passim*

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989) ....................................15

*Johnson v. State*, 43 S.W.3d 1 (Tex. Crim. App. 2001) ........................................23

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ..................................25

*Kalisz v. State,*
32 S.W.3d 718 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) .............*passim*

*Kerley v. State*, 89 Tex. Crim. 199, 230 S.W. 163, 164–65 (1921) .......................29

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) ........................................25

*Loredo v. State*, 59 S.W.3d 289 (Tex. App.-Corpus Christi 2001, no pet.) ............25

*Loy v. State*,
982 S.W.2d 616 (Tex. App.-Houston [1st Dist.] 1998, pet ref'd) ................10, 11

*Miranda v. Arizona*, 384 U.S.436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ...............9

*Mitten v. State*,
228 S.W.3d 693 (Tex. App.-Corpus Christi 2002, pet. dism'd) ...................25, 30

*Mosley v. State*,
983 S.W.2d 249 (Tex. Crim. App. 1998) (op. on reh'g),
*cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999) .............24

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) .......................................26

*Plair v. State*, 279 S.W. 267 (Tex. Crim. App. 1925) .............................................23

*Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005) .........................................26

*Rios v. State*, 4 S.W.3d 400 (Tex. App.-Houston [1st Dist.] 1999, pet. dism'd) ....26

*Russell v. State*, 727 S.W.2d 573 (Tex. Crim. App. 1987) ......................................12

*Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) .......16

*Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003) ...................................20, 21

*Tijerina v. State*, 202 S.W.3d 299 (Tex. App.-Fort Worth 2006, pet. ref'd) ...........25

*United States v. Moreno*, 185 F.3d 465 (5th Cir. 1999) .........................................18

*Wainwright v. Greenfield*,
474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) .......................................10

*Wappler v. State*,
183 S.W.3d 765 (Tex. App.-Houston [1st Dist.] 2005, no pet.) .......................26

*Webb v. State,*
36 S.W.3d 164 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) ....................25

**Statutes, Codes, and Constitutional Provisions:**

TEX.CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013) ...................................10

TEX. R. APP. P. 44.2 ...............................................................................*passim*

TEX. R. APP. P. 9.4 .........................................................................................31

U.S. CONST. amend. V ........................................................................................9

U.S. CONST. amend. XIV ....................................................................................9

**To the Honorable Justices of the Court of Appeals:**

## Statement of the Case

Appellant was charged by information with the Class B misdemeanor offense of driving while intoxicated, alleged to have occurred on July 22, 2012. CR8. Appellant entered a plea of not guilty and a jury found him guilty. 2RR121; CR56. The trial court assessed punishment at 180 days confinement in the county jail, probated for two years, and an $800 fine. CR65-65.  Appellant filed timely written notice of appeal, and the trial court certified his right to appeal.  CR68, 75.

## Statement Regarding Oral Argument

The Court's decisional process would be aided by oral argument in this case because this case presents a unique factual scenario involving the admissibility of an officer's express acknowledgement and comments to other officers regarding Appellant's invocation of the right to counsel. Additionally, this case presents a novel factual scenario concerning the demonstration of harm from the erroneous limitation of voir dire.

## Issues Presented

Issue One:

The trial court erred in admitting evidence of Appellant's post-Miranda invocation of the right to counsel, in violation of due process.

Issue Two:

The trial court erred in prohibiting a proper voir dire question concerning prior experience with assessing punishment.

## Summary of the Arguments

Issue One:  The trial court erred in overruling Appellant's objection to the portions of the videos (State's Exhibits 6 and 7) showing Appellant's post-*Miranda* invocation of the right to counsel, as well as the police officer's acknowledgment of and references to the invocation. Admission of such evidence violates due process by permitting the jury to draw an adverse inference from the exercise of a constitutional right. Reversal is required because Appellant offered an exculpatory explanation for his conduct:  that he had been involuntarily drugged at a nightclub. Additionally, the evidence was conflicting as to his guilt, and the jury asked to review the videos during deliberations. Accordingly, the error is likely to have affected the verdict.

Issue Two:  The trial court abused its discretion by prohibiting a proper voir

2

dire question concerning prior jury experience assessing punishment. The trial court's ruling prohibiting the inquiry was not made for the purpose of setting reasonable time limitations; instead, the trial court erroneously understood the inquiry to be legally objectionable. The error affected Appellant's substantial rights because Appellant expended peremptory challenges against the potentially objectionable panel members and identified other objectionable members who were ultimately seated on the jury. Accordingly, reversal is required.

## Background Facts

At 2:50 a.m. a McDonald's employee called "911" after discovering a pick-up truck in the drive-through lane with an unresponsive driver. 3RR93-94. The occupants of the truck, who had just ordered food, failed to respond to the yelling of employees or the honking of other vehicles. 3RR94-97, 101. Officer Strauss of the Victoria Police Department arrived at 3:16 a.m. and found Appellant and two passengers still unresponsive in the truck, with the engine running and the transmission in drive. 2RR127-130; 3RR19. The encounter and subsequent arrests were recorded by Strauss's patrol car video equipment. 2RR130; SX6; SX7.

Officer Strauss put the vehicle in park and roused Appellant with some effort. 3RR22, SX6-1:05. Appellant was groggy as Strauss ordered him several times to exit the vehicle. 3RR22; SX6-1:10. Strauss noticed that Appellant was a

3

little unsteady on his feet and had glassy bloodshot eyes, and he found a twelve-pack of beer with one empty bottle in the truck. 3RR22. Officer Nieto arrived at the scene and requested Appellant's driver's license; Appellant first handed him a credit card before producing his license. 4RR22. Appellant stated that he had been at Cactus Canyon, a nightclub that admits underage patrons, and denied drinking alcohol. 3RR23, 73-74, 78.

Officer Strauss administered field sobriety tests and observed all three clues in each eye during the horizontal gaze nystagmus (HGN) test. 3RR53. Strauss acknowledged that certain depressant drugs can cause nystagmus, but testified that he smelled the odor of alcohol on Appellant's breath during the HGN. 3RR53. Strauss observed six out of eight possible clues during the walk-and-turn test, and three out of four possible clues on the one-leg-stand test. 3RR58-59. Strauss concluded that Appellant was intoxicated and placed him under arrest. 3RR59-61. Strauss read Appellant the DIC-24 form in conjunction with requesting a breath or blood specimen, which Appellant refused. 3RR63-68.

While Officer Strauss was administering the tests, Officer Nieto obtained permission to move Appellant's truck from the drive-through lane. 4RR23. Both passengers, later identified as Michael Birdwell and Trevor Tristani (Appellant's brother), remained passed out while the truck was moved and for several minutes

thereafter. 4RR23-24. When they awoke, Officer Nieto found that they exhibited signs of intoxication (slurred speech, bloodshot eyes, and the odor of alcohol) and arrested them for public intoxication. 4RR23-27. The rear passenger attempted to escape and was apprehended by several officers near the truck. SX6-29:15. Officer Nieto testified that it was very rare (occurring only one other time in his twenty-four-year career) to encounter a vehicle in a traffic lane with multiple occupants unconscious and difficult to rouse. 4RR30.

Appellant exhibited odd behavior while detained in the patrol car. He asked Officer Strauss for a ride to his house (SX7-16:25), and also asked Strauss to scratch his nose (SX7-17:08). Appellant stated that he could not remember if he had paid for his McDonald's order (SX7-17:40). Minutes later, while on route to the jail, Appellant asked Strauss why he had pulled him over (SX7-24:30). Strauss reminded him that he had not been pulled over but was found passed out in the McDonald's drive-through (SX7-24:43). Appellant said, "What?", then stated that he must be tired from a long work day (SX7-44:46). Strauss testified that the drugs Rohypnol and GHB are powerful sedatives that render a person unconscious and cause deficits in short-term memory. 4RR9-12.

A manager with Appellant's employer testified that employees are subject to random drug testing and that Appellant had never failed a test in four years of employment. 4RR48; DX2-3.

Michael Birdwell testified that he, Appellant, and Appellant's brother Trevor Tristani worked for the same construction company. 4RR60. The three had worked together that day and then had dinner in a restaurant that evening. 4RR51, 61. Birdwell had two beers with dinner but Appellant, who was underage, did not drink alcohol. 4RR52. After dinner, Birdwell bought a twelve-pack of beer and drank one. 4RR52. The group arrived at Cactus Canyon nightclub around 11:30 p.m. 4RR54. Birdwell had three drinks in the club but did not see Appellant drink any alcoholic beverages. 4RR55-56. Birdwell testified that the club served alcoholic beverages in glasses and Appellant had a drink served in a cup, indicating a non-alcoholic beverage. 4RR56. Toward the end of the evening, Appellant, his brother, and Birdwell met some young women who were sitting with a group of men at a table. 4RR55-56. They danced with the women, leaving their drinks on the table because drinks were not permitted on the dance floor. 4RR56-57. When the club closed, the group exited the club with the women and talked with them in the parking lot for a few minutes. 4RR57. Birdwell had no recollection of any events between talking with the women in the parking lot and being awakened by the

6

police at McDonald's. 4RR57-58. Birdwell testified that upon being awakened he felt dizzy, like he could not "come to," very confused and disoriented, and had impaired vision; these effects were different from how he felt when intoxicated from alcohol. 4RR59. Birdwell's memory of being arrested and transported to jail was vague; he recalled talking with Appellant and his brother at the jail, "trying to piece everything together," and then being separated. 4RR64-65.

Appellant corroborated Birdwell's account of the evening and testified that he drank only Coke at the nightclub. 4RR68-70. Appellant recalled dancing with the women and getting a "funny" look from the men the women had been sitting with. 4RR71. Appellant recalled exiting the club with the women and talking with them in the parking lot for ten to fifteen minutes, but did not recall driving or ordering food at McDonald's. 4RR72. Appellant testified that his memory of being arrested and jailed was very sketchy, and that his experience that night not consistent with his prior experience with overconsumption of alcohol. 4RR73, 78. Appellant testified that he telephoned a local hospital, as documented in his cell phone records, after being released from jail to ask about obtaining a blood test because he suspected he had been drugged, but was told that a test could not be done without the order of a treating physician. 4RR74-75; DX1.

7

# Arguments and Authorities

## Issue One
## Erroneous Admission of Invocation of the Right to Counsel

### A. Facts

After Appellant was placed under arrest, Officer Strauss read him the DIC-24 statutory warning and requested a breath or blood specimen. SX7-4:30. In response, Appellant stated, "Could I rather get a lawyer?" SX7-7:16. Strauss informed him that he could get a lawyer but that had no bearing on his question; Appellant declined to provide a specimen. SX7-7:20.

Strauss then read Appellant *Miranda* warnings and asked if he would be willing to answer questions. SX7-8:44. Appellant replied, "I guess I'd like a lawyer." SX7-10:02. Strauss asked, "You want a lawyer before you answer questions?" and Appellant replied, "Yeah, I guess so." SX7-10:08. Strauss stated, "O.K., that's fine," then told Appellant that he was not going to ask any questions about the DWI charges but that they needed to figure out the disposition of his truck. SX7-10:16. Shortly thereafter, Strauss told another officer: "He's invoked his rights; don't ask him nothing." SX7-12:00.

These conversations are contained on State's Exhibits 6 (22:50-30:10) and 7 (4:30-12:00), video recordings of the arrest scene.[1] Appellant lodged numerous objections to the contents of the video recordings and the trial court held a hearing outside the presence of the jury to resolve the issues. Appellant objected to the admission of the portions of the videos portraying his invocation of counsel and the officer's references to Appellant's invocation. 2RR132-134, 139, 144-145, 151. The trial court overruled the objections. 2RR151. Appellant reurged his objections prior to the admission of the exhibits, and the trial court again denied the objections. 3RR103. The jury requested the patrol car videos during deliberations. CR58.

**B. The admission of Appellant's invocation violated due process.**

The Fifth and Fourteenth Amendments to the United States Constitution provide a defendant the right to counsel during a custodial interrogation. U.S. CONST. amends. V, XIV; *Miranda v. Arizona*, 384 U.S.436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In *Miranda*, the United States Supreme Court interpreted this right to include the right to remain silent during a police interrogation, to have an attorney present during custodial interrogation, and to be informed of these rights before any custodial interrogation. 384 U.S. at 478–79, 86

---

[1] State's Exhibits 6 and 7 capture the pre-arrest and post-arrest interactions, respectively, with some overlap, and from different camera angles. The audio and video are somewhat out of sync in both exhibits.

9

S.Ct. at 1630. Article 38.22 of the Texas Code of Criminal Procedure statutorily incorporates these rights. TEX.CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013).

"The guaranty of fundamental fairness in the Due Process Clause forbids the government from making the *Miranda* promises and breaking them by using a suspect's exercise of a right as evidence against him." *Griffith v. State*, 55 S.W.3d 598, 605 (Tex. Crim. App. 2001) (citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (denial of due process to use defendant's post-arrest, post- Miranda silence for impeachment purposes)); *see also Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized."). Thus, if a defendant is given *Miranda* warnings and subsequently invokes his right to counsel, the State cannot use the defendant's invocation of his rights as evidence against him at trial. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991); *Kalisz v. State*, 32 S.W.3d 718, 723 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); *Gray v. State*, 986 S.W.2d 814, 815 (Tex. App.-Beaumont 1999, no pet.); *Loy v. State*, 982 S.W.2d 616, 617 (Tex. App.-Houston [1st Dist.] 1998, pet ref'd); *Cooper v. State*, 961 S.W.2d 222, 226–27 (Tex. App.-Houston [1st

10

Dist.] 1997, pet. ref'd).

This kind of due process violation is prejudicial to a defendant because the introduction of such evidence invites the jury to draw an adverse inference of guilt from the exercise of a constitutional right. *Hardie*, 807 S.W.2d at 322; *Kalisz*, 32 S.W.3d at 723. Stated another way, the probable collateral implication of a defendant's invocation of his rights is that he is guilty. *Gray*, 986 S.W.2d at 815; *Loy*, 982 S.W.2d at 618; *Cooper*, 961 S.W.2d at 227.

In *Hardie*, after receiving his *Miranda* warnings, the defendant requested to speak with an attorney or his mother before submitting to a breath test. *Id*. at 320. The trial court, over the defendant's written objection, allowed the jury to hear the defendant, on tape, invoke his right to counsel. *Id*. at 320-21. The court of appeals acknowledged that evidence of an accused's invoking his right to counsel may be construed against him and may improperly be considered as an inference of guilt. *Id*. at 322. The court recognized it is constitutionally impermissible to adversely use evidence that a defendant invoked a right or privilege which has been granted him, even if the right or privilege was erroneously extended. *Id*. (citing *Doyle v. Ohio*, 426 U.S. 610, 618 n.9 (1976)). Accordingly, the court held that "evidence of one's invocation of the right to counsel is inadmissible as evidence of guilt." *Id*. The court noted that "[a]lthough the State did not specifically state it was offering the audio

11

portion of the videotape as evidence of guilt, no other basis for its admission was propounded by the State and no other basis is apparent from the context of the record." *Id*. at 322 n. 6.

To benefit from these rights, a defendant must affirmatively and clearly invoke them: "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). While the defendant need not say "magic words," his invocation must, under all of the facts and circumstances, be construed as invoking his right to counsel. *Russell v. State*, 727 S.W.2d 573, 575 (Tex. Crim. App. 1987). The test is objective: whether the suspect articulated his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010).

Appellant articulated his desire sufficiently clearly. His request came immediately on the heels of the *Miranda* warnings and in response to Officer Strauss's question as to whether he wished to waive those rights and answer questions. Officer Strauss understood Appellant's statements to be the request for an attorney, as indicated by his immediate acknowledgement of the invocation and

12

subsequent comments, and this conclusion was not unreasonable.

However, if an officer's questions or comments on a recording create the impression that a defendant has invoked his rights, admission of such evidence is constitutional error even if the invocation is not clear. In *Kalisz v. State,* 32 S.W.3d 718 (Tex.App.–Houston [14 Dist.] 2000, pet. ref'd), the defendant was arrested for DWI and given *Miranda* warnings at the police station. *Id.* at 722. When the officer asked the defendant if he understood his right to have an attorney, the defendant attempted to exit the room and was brought back. *Id.* at 722-723. The defendant then stated, "I have a lawyer" and moved toward the door; this response was muted by the trial court when the video was played for the jury. *Id.* at 723. The officer next asked, "Are you terminating the interview? [No response.] Are you terminating the interview? [No response.] Very good then." *Id.* The officer then terminated the interview and the recording ended. *Id.* The court of appeals found that the officer's questions concerning the *Miranda* rights were admissible except for the question regarding the right to counsel. *Id.* The trial court erred in introducing the portion of the tape that contained the questions regarding his right to counsel and everything thereafter because the exchange created an "inescapable conclusion" that the defendant had invoked his rights:

> Even if appellant was not terminating the interview,
> which is difficult to tell, the officer's comments made it

> appear that appellant did want to stop the interview to talk with his lawyer. The jury should not have seen or heard this last exchange because, viewing the tape in its entirety, it creates an impression that appellant had, indeed, invoked his right to counsel and to terminate the interview.

*Id.* at 723-24.

In *Dumas v. State*, 812 S.W.2d 611 (Tex.App.—Dallas 1991, pet. ref'd), the trial court admitted into evidence the audio portion of the videotape in which the jury was allowed to hear the interrogating officer give the defendant his *Miranda* warnings and ask him if he wanted to waive his rights. *Id.* at 614. The volume was then turned down to exclude the defendant's refusal to waive his rights. The court of appeals held that it was harmful error to allow the jury to hear the officer give the *Miranda* warnings and ask the defendant if he wanted to waive them and then turn the volume down, because it led the jury to the conclusion that the defendant had invoked his right to remain silent. *Id.*

Likewise, the instant case, the recording conveyed to the jury that Appellant had invoked his right to counsel. The exchange between Appellant and Officer Strauss regarding his waiver of rights and request for an attorney, and Officer's Strauss's subsequent comments informing another officer that Appellant had "invoked his rights," should not have been played for the jury.

14

## C. The error was harmful, requiring reversal.

Because the error involved in this issue is constitutional in magnitude, the court must assess harm using the standard set forth in Rule 44.2(a) of the Rules of Appellate Procedure. Rule 44.2(a) provides that reversal is required unless the court determines beyond a reasonable doubt that the trial court's constitutional error did not contribute to the conviction. In determining whether constitutional error in the admission of evidence is harmless, the court considers several factors, including the following: the importance of the evidence to the State's case; whether the evidence was cumulative of other evidence; the presence or absence of other evidence corroborating or contradicting the evidence on material points; the overall strength of the State's case; and any other factor, as revealed by the record, that may shed light on the probable impact of the error on the mind of the average juror. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). In addition, the court may consider: the source and nature of the error; the emphasis placed upon the evidence by the State; the weight a juror may have placed on the evidence; and whether finding the error harmless would encourage the State to repeat the conduct. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).

The court should not premise its harm analysis for constitutional error on an examination of whether the State presented sufficient evidence, absent the

erroneously admitted evidence, for a rational jury to find the defendant guilty. *Satterwhite v. Texas*, 486 U.S. 249, 258–59, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) ("The question, however, is not whether the legally admitted evidence was sufficient to support the death sentence, which we assume it was, but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' "); *see also Brooks v. State*, 132 S.W.3d 702, 708 (Tex. App.-Dallas 2004, pet. ref'd) ("The fact that the legally admitted evidence is sufficient to support the verdict does not demonstrate the error was harmless.").

Courts have routinely found the erroneous admission of the invocation of rights to be harmful, even in the face of ample of evidence of intoxication, and particularly where, as in this case, the jury viewed the video during deliberations.

In *Hardie, supra,* the Court of Criminal Appeals found that the defendant was harmed by the error because the jury foreman submitted a note stating that the jury had reached an impasse, then submitted a note about the video before reaching a verdict. 807 S.W.2d at 322. Because the court not conclude that the jury would have reached the same verdict if they had not had before them as evidence the audio portion of the videotape wherein appellant invoked his right to counsel, reversal was required. *Id.*

16

In *Kalisz, supra,* the court found that the defendant was harmed, requiring reversal, even though the State did not emphasize the error in any way, and the trial court did offer an instruction on the excluded audio portion of the tape. 32 S.W.3d at 724. While the court found "compelling evidence" to show that appellant lacked the normal use of his mental and physical faculties on the night in question, the defendant presented evidence that he had taken Valium and had not imbibed any alcohol. *Id.* During its deliberation, the jury specifically asked to review the videotape a second time. *Id.* Because the evidence was conflicting, the court was unable to conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. *Id.*

In *Dumas, supra,* the error was harmful, requiring reversal, even though there was ample evidence of intoxication. 812 S.W.2d at 614. The defendant was seen behind the wheel in a parking lot apparently passed out, then was seen weaving while driving. *Id.* at 613. After being stopped, the defendant, who smelled of alcohol, failed two sobriety tests. *Id.* Because the jury requested to view the video during deliberations, the court of appeals could not conclude beyond a reasonable doubt that the error was harmless. *Id.* at 614.

As in the above cases, harm cannot be ruled out beyond a reasonable doubt here. The jury requested both videos during deliberations, and thus had the

17

opportunity to hear evidence of the invocation twice, in addition to hearing the recordings during trial. As in *Kalisz*, Appellant presented evidence that he had not imbibed any alcohol. Numerous unusual circumstances supported Appellant's theory that he had been involuntarily drugged:  the fact that he and his companions lost consciousness suddenly and simultaneously and were difficult to rouse, their reports of strange symptoms, and Appellant's apparent short term memory deficits and confusion.

The Fifth Circuit has explained that evidence concerning the invocation of the right to counsel is particularly damaging in cases where the defendant intends to offer an exculpatory story at trial:

> [T]he substantive use of a defendant's invocation of counsel or silence before the defendant has the opportunity to offer her exculpatory story places her in an untenable position. "If she does not take the stand, an inference of guilt by the jury is a possible inference; if she does take the stand, her credibility will already be in question and the jury might simply discount as fabricated a story the defendant neglected to tell the police on the scene."

*United States v. Moreno*, 185 F.3d 465, 473 (5th Cir. 1999) (internal alterations omitted) (quoting *Chapman v. United States*, 547 F.2d 1240, 1243 n. 5 (5th Cir. 1977)).

These damaging inferences are present here. Repeatedly hearing Appellant's

invocation of the right counsel likely influenced the jury's consideration of Appellant's defensive theory, and thus its ultimate verdict. The error was not harmless beyond a reasonable doubt; Appellant's conviction must be reversed.

## Issue Two: Erroneous Prohibition of a Proper Voir Dire Question

### A. Facts

During Appellant's voir dire, defense counsel attempted to ask several panel members with prior criminal jury service whether the judge or jury had assessed punishment in those cases. 2RR68-69. The trial court stopped defense counsel and informed him that he could not ask that question because the answer would imply what the verdicts were in the prior cases. 2RR69-71. Appellant objected to the court's refusal to allow a proper question, and the objection was overruled. 2RR70-71.

Appellant resumed voir dire and identified four panel members who had served on juries in criminal cases in which verdicts had been reached. 2RR71-74. At the close of voir dire, Appellant identified three of those four panel members who were within the strike zone, used his peremptory challenges against those three members, identified three additional members within the strike zone who were objectionable, stated the reasons why they were objectionable, and requested three additional peremptory challenges. 2RR113-114. The trial court denied the requested

additional peremptory challenges. 2RR114.

**B.  The trial court abused its discretion in prohibiting a proper question.**

When an appellant challenges a trial court's limitation of his voir dire, the reviewing court analyzes this challenge under an abuse-of-discretion standard, "the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry." *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex. Crim. App. 1991), overruled on other grounds, *Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995). A trial court has broad discretion over jury selection, including the right to impose reasonable limits on the voir dire examination. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). But a trial court's discretion is abused when it prohibits a proper question about a proper area of inquiry. *Id*. at 755-56.

The Court of Criminal Appeals has recently clarified that questions inquiring about prior verdicts are proper. In *Blackman v. State*, 414 S.W.3d 757 (Tex. Crim. App. 2013), the court held that a veniremember's response to questions about prior jury service provided a race-neutral basis for a peremptory challenge. The court corrected a misconception regarding the propriety of voir dire questions inquiring about specific verdicts:

> The parties seemed to operate under the assumption that the law would absolutely prohibit any inquiry during voir dire into what specific verdict, if any, the prospective jurors had actually reached in the course of their prior

jury service. We note that, while it may be within a trial court's discretion to prohibit such a question, in the interest of placing reasonable limitations upon the length of voir dire, there is no absolute legal impediment to posing it.

*Id.* at 761 & n. 7.

In the instant case, the trial court prohibited the question *not* for the purposes of setting reasonable time limitations, but because it believed the question was legally improper. The trial court permitted Appellant to ask the panel members whether the prior service involved a felony or misdemeanor, whether they served as foreman, and whether the jury reached a verdict. 2RR69-74. Only four panel members had served on juries that reached verdicts; permitting Appellant to ask one more question of those four members would not have unduly prolonged voir dire. *See Espinosa v. State*, 653 S.W.2d 446, 450 (Tex. App.—San Antonio 1982) (op. on reh'g), *aff'd,* 669 S.W.2d 736 (Tex. Crim. App. 1984) ("We fail to see how time is saved by permitting inquiries as to prior jury service, which court, what offense, and when, but not permitting the question as to the verdict.").

Moreover, the trial court's comments in regards to its ruling indicate that it prohibited the question because it believed it to be legally objectionable:

THE COURT: [Defense Counsel] asked a question of the jurors, have you been on a jury. The answer was yes. A next question was, did you reach a verdict? The answer was, yes. The next question became did you or did a

21

judge assess the penalty. I've admonished [Defense Counsel] that that indicates that verdict was a guilty in nature and I'm just simply admonished him that you cannot ask what the verdict was. He's getting awfully close. He has asked the question. It was answered, and I think we're fine right now especially since the State didn't object.

* * *

DEFENSE COUNSEL: All right. Just so – just making sure I'm preserved, the question I wanted to ask was, did the court or jury assess punishment, and Your Honor is instructing me not to ask that question, correct?

THE COURT: That is correct.

DEFENSE COUNSEL: Okay.

THE COURT: Because it implies as to what the verdict was.

DEFENSE COUNSEL: Yes, sir, I'll follow the Court's instructions. Note my objection. Thank you.

2RR70-71. These comments clarify that the trial court's ruling was not made in the interest of setting reasonable time limits.

There was no other valid reason to prohibit the question. It was not an improper commitment question, nor was it repetitious, nor so vague or broad in nature as to constitute a global fishing expedition. *Sells,* 121 S.W.3d at 756. Because the question concerned a proper area of inquiry, the trial court abused its discretion in prohibiting it.

## C. Reversal is required.

It is not an appellant's burden to show harm, but the "duty of the reviewing court to assess harm from the context of the error." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). The Texas Court of Criminal Appeals recently held that erroneously limiting voir dire does not necessarily equate to a violation of the constitutional right to be heard. *Easley v. State*, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) (overruling *Plair v. State*, 279 S.W. 267, 269 (Tex. Crim. App. 1925), to extent that it held that erroneously limiting voir dire is constitutional error because such limitation is *per se* violation of right to counsel). In *Easley*, the Court of Criminal Appeals held that there may be instances in which a judge's limitation on voir dire is "so substantial" as to rise to the level of a constitutional error. *Id*. The proper analysis is not to apply a *per se* rule to a voir dire error but to determine if the error is substantial enough to warrant a Rule 44.2(a) analysis for constitutional error; if not, then the error is reviewed under Rule 44.2(b) for non-constitutional error. *Id.*; TEX. R. APP. P. 44.2.

The Court in *Easley* affirmed the appellate court's application of the more lenient non-constitutional harm analysis under Rule 44.2(b) to the trial court's erroneous refusal to allow the defendant's counsel to compare the criminal burden of proof beyond a reasonable doubt to other burdens of proof during voir dire. *Id.*

23

The court agreed with the appellate court's holding that the trial court's error did not rise to the level of a constitutional error because defense counsel was not "foreclosed from explaining the concept of beyond a reasonable doubt and exploring the veniremembers' understanding and beliefs of reasonable doubt by other methods." *Id.*

In this case, Appellant was wholly prevented from ascertaining whether the panel members had prior experience assessing punishment. The trial court did not permit Appellant to phrase his inquiry differently and to effectively explore the issue, as in *Easley*. Accordingly, the error here should be analyzed under the standard for constitutional harm:  reversal is required unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  TEX. R. APP. P. 44.2(a).

Appellant asserts, however, that the error here was harmful even under the less stringent standard for non-constitutional harm. Applying Rule 44.2(b), the court should disregard the error if it did not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). A substantial right is affected, requiring reversal pursuant to Rule 44.2(b), when the error had a substantial and injurious effect or influence on the jury's

verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error

had no influence or only a slight influence on the verdict, it is harmless. *Johnson v.*

*State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). If it is unclear whether the

error affected the outcome, the court should treat it as harmful. *Mitten v. State*, 228

S.W.3d 693, 696-97 (Tex. App.-Corpus Christi 2002, pet. dism'd); *Webb v. State*,

36 S.W.3d 164, 182 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

When an error occurs in the questioning that results in the selection of the

jury, there is a probability that the error will skew every act taken by counsel in

connection with the denied questions because counsel has been improperly denied

the right to have insight into the jurors' reactions to that area. *Loredo v. State*, 59

S.W.3d 289, 293 (Tex. App.-Corpus Christi 2001, no pet.) (holding trial court error

in refusing to allow defense counsel to ask proper questions about parole was

harmful and noting such error will rarely be harmless); *Gonzales v. State*, 2 S.W.3d

600, 606 (Tex. App.-Texarkana 1999, pet. ref'd) (noting that prudent defense

counsel—when faced with trial court error preventing him from questioning

potential jurors about their attitudes toward a specific defense—would not attempt

to present evidence of that defense to jury). Accordingly, this type of error will

rarely be harmless. *Loredo* at 293; *Tijerina v. State*, 202 S.W.3d 299, 305 (Tex.

App.-Fort Worth 2006, pet. ref'd) (error in prohibiting the defense from asking the

jury venire if anyone would automatically disbelieve somebody simply because they were a convicted felon affected defendant's substantial rights); *Wappler v. State*, 183 S.W.3d 765, 779 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (holding trial court error in prohibiting defendant from asking proper voir dire questions on various issues harmful); *Rios v. State*, 4 S.W.3d 400, 403–04 (Tex. App.-Houston [1st Dist.] 1999, pet. dism'd) (noting that the issue "defies analysis" but holding error harmful under Rule 44.2(a)); *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (applying former Rule 81(b)(2) harm analysis to hold that some errors will never be harmless because "data is insufficient to conduct a meaningful harmless error analysis").

When analyzing harm from the prohibition of a proper question, the court generally reviews the entire record, and to the extent applicable, uses the following factors as context for our consideration of the error's effect on the jury's deliberations: (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and (8) whether the State emphasized the error. *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App.

26

2005) (citing *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002) (setting forth factors to consider in harm analysis and applying relevant factors to analysis of erroneous admission of evidence)).

In *Easley,* the Court of Criminal Appeals found that voir dire and the nature of the evidence supporting the verdict to be the most applicable and significant factors in this type of error. 242 S.W.3d at 542. The court found that defense counsel, while prohibited from comparing different standards of burden of proof using a stair-step analogy, was still permitted to contrast the criminal standard from the civil standard and to question the venire members individually regarding their concept of reasonable doubt. *Id.* Because the defense was permitted to adequately explore the jurors' views on the issue, and because evidence of guilt was "substantial," the error was harmless. *Id.* at 542-43.

In the instant case, Appellant was not permitted to ascertain by any means whether the panel members had prior experience assessing punishment; thus, the court cannot exclude the possibility that the error had a substantial effect on the verdict.

Moreover, in this case, harm is not merely theoretical. Appellant identified on the record three panel members within the strike zone whom the defense was prevented from questioning about prior experience assessing punishment. Appellant

informed the trial court that the defense exercised peremptory challenges against those three members, and identified three additional members within the strike zone who were objectionable. Additionally, Appellant stated the reasons why they were objectionable, and requested three additional peremptory challenges, which the trial court denied. 2RR113-114.

Two of those objectionable panel members, Jurors 10 (Huber) and 13 (Knipling), sat on the jury. 2RR115. Juror 10 stated that he would give police officers more credibility than other witnesses from the outset, "all other things being equal." 2RR99-100. Juror 10 also volunteered that he believed a suspect's refusal to submit to alcohol testing was a "tactic to buy time." 2RR101. Appellant's challenge for cause against Juror 10 was denied. 2RR103. Juror 13 indicated that she might give police officers more credibility at the outset, and that because of their experience their testimony might be "more valid." 2RR104. Juror 13 was also objectionable to the defense because she was a child care manager. 2RR114.

A defendant is "actually harmed" if, due to the trial court's error, he suffers the loss of a peremptory strike. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014) (explaining harm analysis for erroneous denial of challenge for cause). "Peremptory strikes are given to each side to use as they see fit. The defendant may strike any member of the venire panel for any reason (except a prohibited reason

28

such as race or sex) or no reason at all." *Id.* "It is the privilege of accused to exclude from jury service one [who], in his judgment, is unacceptable to him." *Id.*, quoting *Kerley v. State*, 89 Tex. Crim. 199, 230 S.W. 163, 164–65 (1921).

In this case, the error resulted in Appellant's inability to identify objectionable panel members. Accordingly, Appellant was harmed because he was forced to expend peremptory challenges against potentially objectionable panel members while other objectionable members were seated on the jury. A defendant need not even identify why a panel member is objectionable in order to demonstrate harm; it is sufficient that "he did not want him on the jury." *Comeaux* at 750 & n. 17.

Moreover, having jurors with a tendency to favor the testimony of police officers was likely to substantially influence the verdict in this case. According to police testimony, Appellant's breath smelled of alcohol. 3RR53. This testimony was the only evidence that directly contradicted Appellant's testimony that he did not drink any alcohol and therefore believed he had been involuntarily drugged. The remaining evidence of Appellant's loss of mental and physical faculties was consistent with Appellant's defensive theory, and other evidence (the sudden and simultaneous loss of consciousness of Appellant and his two companions, unusual memory lapses) favored Appellant's theory. Accordingly, the jury's assessment of

29

the officer's credibility was critical.

In these circumstances, it is at least unclear whether the error affected the outcome; accordingly the court should treat it as harmful and reverse the conviction. *Mitten v. State*, 228 S.W.3d 693, 696-97 (Tex. App.-Corpus Christi 2002, pet. dism'd).

## PRAYER

Appellant respectfully requests that the Court reverse his conviction and remand for a new trial.

Respectfully submitted**,**

/s/ Norman J. Silverman
**NORMAN J. SILVERMAN**
**Texas Bar No. 00792207**
**917 Franklin, 4th Floor**
**Houston, Texas 77002**
**(713) 526-1515**
**(713) 526-1798 (FAX)**
**lawyernorm@msn.com**

**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

This document has been electronically served on the following parties contemporaneously and in conjunction with e-filing on March 8, 2015.

Stephen B. Tyler
Victoria County Criminal District Attorney
205 N. Bridge St., Suite 301
Victoria, Texas 77901
stephenbtyler@hotmail.com

/s/ Norman J. Silverman

## CERTIFICATE OF COMPLIANCE

This document has been prepared with Microsoft Word 2010, and the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 6,395 words according to the program's word-count function.

/s/ Norman J. Silverman